COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-08-196-CV

STEPHEN C. WALTERS, D.D.S.; APPELLANTS

ARLINGTON ORAL SURGERY, P.A.;

AND PARTY DOING BUSINESS AS

ARLINGTON ORAL SURGERY

V.

TRINA HUDOBA, INDIVIDUALLY APPELLEE

AND ON BEHALF OF THE ESTATE

OF ELIZABETH TAYLOR, DECEASED

------------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Stephen C. Walters, D.D.S., and Arlington Oral Surgery, Appellants, (collectively referred to herein as Dr. Walters) appeal the trial court’s denial of their motion to dismiss Appellee Trina Hudoba’s dental malpractice claim for the alleged failure to file an adequate expert report.  Because Appellee timely filed an adequate expert report, the trial court did not abuse its discretion by refusing to dismiss the suit.  Accordingly, we will affirm the trial court’s order.

II.  Factual and Procedural Background

Appellee’s daughter, Elizabeth Taylor, sought treatment from Dr. Walters for a tooth extraction.  Taylor was five-foot-three-inches tall and weighed 290 pounds; she suffered from a heart murmer, high blood pressure, chest pain, irregular heart beat, bronchitis, asthma, and sleep apnea.  Prior to performing the tooth extraction procedure, Dr. Walters administered general anesthesia to Taylor.  Following the administration of the anesthesia drugs, Taylor stopped breathing.  Resuscitation efforts commenced; Dr. Walters intubated Taylor—placing the tube into Taylor’s stomach instead of her lungs—and a call to 911 was placed.  Paramedics arrived and transported Taylor to the hospital where she was pronounced dead on arrival.

The State Board of Dental Examiners (the Board) initiated an investigation into Taylor’s death.  Roger P. Byrne, D.D.S, M.D. examined the Board’s investigative file and prepared an expert report for the Board.  The report is eighteen pages long and details the records Dr. Byrne reviewed, the statements Dr. Byrne reviewed, the sequence of events that occurred, the “record keeping” standard of care violations by Dr. Walters, and the nine “standard of care violations committed by Dr. Walters which led to Ms. Taylor’s death.”  It contains a report summary concluding that “[i]t is my opinion Dr. Walters’[s] negligent acts are responsible for the demise of Ms. Elizabeth Taylor.”  A copy of Dr. Byrne’s report is attached to this opinion as Appendix A.

Appellee attached Dr. Byrne’s report to her October 30, 2007 original petition to satisfy the statutory expert report requirement.  
See
 Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon Supp. 2008).  Appellants timely filed an answer that, in two paragraphs, objected to Dr. Byrne’s expert report.  Specifically, Appellants alleged that

8.  Defendants object to the correspondence/report and curriculum vitae of Roger P. Byrne, D.D.S., M.D., as attached to Plaintiff’s Original Petition.  Dr. Byrne’s correspondence, with attached curriculum vitae, is confidential communication to the State Board of Dental Examiners, and therefore, should not be attached to Plaintiff’s Original Petition.  Defendants further object to any attempt by Plaintiff [sic] utilize Dr. Byrne’s correspondence to comply with the expert report requirements of Chapter 74 of the Texas Civil Practice & Remedies Code.

9.  To the extent that Plaintiff is attempting to utilize the correspondence and curriculum vitae of Roger P. Byrne, D.D.S., M.D. to comply with the expert report requirements of Chapter 74 of the Texas Civil Practice & Remedies Code, Defendants object to the opinions and qualifications of Dr. Byrne in accordance with Chapter 74 of the Texas Civil Practice & Remedies Code.  Additionally, Defendants object to the sufficiency of the report/correspondence and curriculum vitae of Dr. Byrne in accordance with Chapter 74 of the Texas Civil Practice & Remedies Code. 

The record reflects that Appellee requested a hearing on Dr. Walters’s objections, set forth above.  Dr. Walters filed “Objections to Hearing on Chapter 74 Objections,” claiming that “Chapter 74 does not permit the Court to rule on Defendants’ objections to Plaintiff’s expert report prior to the 120-day deadline” and requesting that “the hearing on Defendants’ objections to Plaintiff’s expert report be reset until after the 120-day deadline.”  The trial court conducted a hearing on January 14, 2008, within 120 days of Appellee’s October 30, 2007 filing of her original petition.  The trial court signed a February 5, 2008 order overruling Dr. Walters’s objection to conducting the hearing prior to the 120-day deadline and also overruling Dr. Walters’s objections to the expert report of Dr. Byrne. 

On March 14, 2008, Dr. Walters filed a motion to dismiss Appellee’s claim for “failure to comply with Chapter 74 expert report requirement.”  Dr. Walters specifically alleged that Dr. Byrne was not qualified and that his report “fails to establish the causal relationship between defendants’ alleged negligence and Elizabeth Taylor’s death.”  Appellee filed objections and a response to Dr. Walters’s motion to dismiss.  Appellee contended that “a hearing was already held on all of Defendants’ objections to Plaintiff’s expert report under Chapter 74 and all of Defendants’ objections were overruled.” 

The trial court conducted a hearing on Dr. Walters’s motion to dismiss on April 8, 2008.  The trial court signed an April 21, 2008 order overruling Appellee’s objection to the motion to dismiss contending that all objections to Dr. Byrne’s report had been overruled by the trial court’s prior order.  The trial court also denied Dr. Walters’s motion to dismiss.  Dr. Walters perfected this appeal.

III. Dr. Walters’s Appellate Contentions

In his sole issue, Dr. Walters contends that the trial court abused its discretion by denying his motion to dismiss.  Dr. Walters argues on appeal that Dr. Byrne’s report “fails to establish the causal relationship between Dr. Walters’[s] alleged negligence and Ms. Taylor’s death.”  Specifically, Dr. Walters claims that Dr. Byrne’s report (1) addresses Dr. Walters’s alleged violation of the State Board’s rules, but it “does not establish the causal relationship between Dr. Walters’[s] purported negligence and Elizabeth Taylor’s death;” (2)”is conclusory because he fails to rule out other possible causes of Ms. Taylor’s death;” (3) “fails to explain how Dr. Walters’[s] failure to appropriately treat Ms. Taylor’s respiratory depression caused her death;” (4) “omits any explanation for how Dr. Walters’[s] administration of general anesthesia proximately caused Ms. Taylor’s death;” (5) “contains a large analytical gap[] in that he failed to explain how Dr. Walters’[s] administration of Versed, Fentanyl, and Propofal proximately caused Ms. Taylor’s death;” and (6) “fails to flesh out how Dr. Walters’[s] administration of general anesthesia and failure to respond to Ms. Taylor’s respiratory depression caused Ms. Taylor’s death.” 

On appeal, Dr. Walters does not raise any challenge to Dr. Byrne’s qualifications, but on page 8 of his brief he complains:

Dr. Byrne was retained by the Texas State Board of Dental Examiners (“State Board”) to serve as an expert witness in the State Board’s case involving Dr. Walters’[s] treatment of Ms. Taylor.  Dr. Byrne wrote his report as an expert witness for the State Board. . . . Dr. Byrne’s opinions are relevant to the State Board’s investigation of Dr. Walters’[s] treatment of Ms. Taylor,   . . . but Dr. Byrne’s opinions are irrelevant in this malpractice case. . . . While Dr. Byrne’s report addresses Dr. Walters’[s] alleged violation of the State Board’s Rules, it does not establish the causal relationship between Dr. Walters’[s] purported negligence and Elizabeth Taylor’s death.”

  

Thus, Dr. Walters’s two main appellate complaints concerning Dr. Byrne’s report concern causation and Appellee’s reliance on a report prepared for the Board. 

IV.  Waiver of Causation Objection

Appellee claims that Dr. Walters waived all of his causation objections because he did not timely assert them in the trial court.  Texas Civil Practice and Remedies Code, section 74.351(a) provides:

In a health care liability claim, a claimant shall, not later than the 120th day after the date the original petition was filed, serve on each party or the party’s attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. . . . 
Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived
.

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (emphasis added); 
see also Maris v. Hendricks
, 262 S.W.3d 379, 385 (Tex. App.—Fort Worth 2008, pet. denied) (holding objection to sufficiency of chapter 74 expert report was waived because it was not asserted within the statutory twenty-one-day time period).   Dr. Walters concedes that he was required to object to Dr. Byrne’s report within the statutory twenty-one-day time period; Dr. Walters explained at oral argument that the objection asserted in his answer that “Defendants object to the sufficiency of the report/correspondence and curriculum vitae of Dr. Byrne in accordance with Chapter 74 of the Texas Civil Practice & Remedies Code” impliedly included an objection to every statutory element of an expert report.  Thus, Dr. Walters claims that he did timely assert his causation objection.

We cannot agree.  Dr. Walters’s only timely filed objections to Dr. Byrne’s report were contained in paragraphs 8 and 9 of his original answer, set forth previously in this opinion.  Dr. Walters objected to Appellee’s use of a report prepared for the Board and to the “opinions and qualifications of Dr. Byrne” and “the sufficiency of the report.”  Neither of these objections raise the objections to the causation element of Dr. Byrne’s report set forth in his motion to dismiss or in his brief on appeal.  
See
 Tex. R. App. P. 33.1(a) (requiring objection to be specific); 
Plemons v. Harris
, No. 02-08-00326-CV, 2009 WL 51290, *3 (Tex. App.—Fort Worth Jan. 8, 2009, no pet. h.) (holding objection to expert report made in trial court must comport with complaint asserted on appeal).  Because Dr. Walters did not timely assert specific causation objections, he waived those objections.  
See Ogletree v. Matthews
, 262 S.W.3d 316, 322 (Tex. 2007) (stating that any objection to report must be made within twenty-one days after service of  report); 
Williams v. Mora
, 264 S.W.3d 888, 891(Tex. App.—Waco 2008, no pet.) (holding that when defendant’s only timely filed objections to expert report were that two statements were speculative, defendant waived all other objections); 
Springer v. Johnson
, No. 07-07-00424-CV, 2008 WL 2346385, at *9 (Tex. App.—Amarillo June 4, 2008,  no pet.) (holding objection to report not raised in trial court was waived).  Because the causation objections asserted in Dr. Walters’s motion to dismiss and in this appeal were not filed within twenty-one days of the service of Dr. Byrne’s report, we hold they were waived and overrule the portion of Dr. Walters’s issue arguing that Dr. Byrne’s report is inadequate on the issue of causation.  
See 
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).   

V.  Dr. Walters’s Objection Concerning Use of

Report Prepared for the Board

In the second portion of his sole issue, Dr. Walters argues that he did, however, timely object to Appellee’s use of Dr. Byrne’s report because the report was prepared for the Texas State Board of Dental Examiners.  As set forth above, at page eight of his brief Dr. Walters attempts to bootstrap, or tie, his causation arguments to his preserved contention that the trial court abused its discretion by concluding that a report prepared for the State Board was an adequate report.  We have held that Dr. Walters waived his causation objections; but in the interest of justice, alternatively, and because this causation argument is bootstrapped to an objection that Dr. Walters did timely make, we address Dr. Walters’s causation arguments below.

A.  Standard of Review

We review a trial court’s denial of a motion to dismiss for an abuse of discretion.  
Ctr. for Neurological Disorders, P.A. v. George
, 261 S.W.3d 285, 290–91 (Tex. App.—Fort Worth 2008, no pet.); 
Maris
, 262 S.W.3d at 383.  To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.  
Downer v. Aquamarine Operators, Inc.
, 701 S.W.2d 238, 241–42 (Tex. 1985), 
cert. denied
, 476 U.S. 1159 (1986).  Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.
  Id
.  But a trial court has no discretion in determining what the law is or in applying the law to the facts, and thus “a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion.”
  Walker v. Packer
, 827 S.W.2d 833, 840 (Tex. 1992);
 Ehrlich v. Miles
, 144 S.W.3d 620, 624 (Tex. App.—Fort Worth 2004, pet. denied)
.

B.  No Abuse of Discretion

A trial court must grant the motion to dismiss if it finds, after a hearing, that “the report does not represent an objective good faith effort to comply with the definition of an expert report” in the statute.  Tex. Civ. Prac. & Rem. Code Ann.
 § 74.351(
l
).  While the expert report “need not marshal all the plaintiff’s proof,”
 Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios
, 46 S.W.3d 873, 878 (Tex. 2001) (construing former art. 4590i, § 13.01),  it must provide a fair summary of the expert’s opinions as to the “applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.”
  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6).

To constitute a good-faith effort, the report must “discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit.”  
Palacios
, 46 S.W.3d at 875.  A report does not fulfill this requirement if it merely states the expert’s conclusions or if it omits any of the statutory requirements.
  Id. 
at 879.  But the information in the report “does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial.”  
Id.
  The claimant’s expert must incorporate enough information to fulfill two purposes: (1) inform the defendant of the specific conduct the plaintiff has called into question; and (2) provide a basis for the trial court to conclude the claims are meritorious.  
Id.

When reviewing the adequacy of a report, the only information relevant to the inquiry is the information contained within the four corners of the document.  
Id. 
at 878.  This requirement precludes a court from filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended.  
See id
.  However, section 74.351 does not prohibit 
experts
, as opposed to courts, from making inferences based on medical history.  
Marvin v. Fithian
, No. 14-07-00996-CV, 2008 WL 2579824, at *4 (Tex. App.—Houston [14th Dist.] July 1, 2008, no pet.) (mem. op.); 
see also 
Tex. R. Evid.
 703 (providing that an expert may draw inferences from the facts or data in a particular case); Tex. R. Evid. 705 (providing that expert may testify in terms of opinions and inferences).

To establish causation, an expert report must provide information linking the defendant’s purported breach of the standard of care to the plaintiff’s injury.  
See Hutchinson v. Montemayor
, 144 S.W.3d 614, 617 (Tex. App.—San Antonio 2004, no pet.); 
see also Bowie Mem’l Hosp. v. Wright
, 79 S.W.3d 48, 53 (Tex. 2002).  An expert must also explain the basis of his statements to link his conclusions to the facts.  
Wright
, 79 S.W.3d at 52.

A review of Dr. Byrne’s report refutes each of Dr. Walters’s claims concerning its causation sufficiency.  Dr. Byrne’s report explains, 

It is my medical opinion, based on the known sequence of events and reasonable medical probability, Ms. Taylor’s death on 11/4/05 resulted from three separate, but obviously connected, findings: 1) morbid obesity, reactive airway disease, “difficult airway”, possibly contributing obstructive sleep apnea, hypertension and cardiac hypertrophy; 2) Dr. Walters[‘s] decision to perform an office-based operator-anesthetist general anesthesia on Ms. Taylor; and 3) respiratory depression, resultant apnea and hypoxia from the administration of Versed, Fentanyl, and Propofol medications with a progressive spiral of decline into a life-threatening emergency which was not appropriately treated by Dr. Walters. 

After setting forth Dr. Walters’s standard of care violations in classifying the pre-operative physical risk status of Ms. Taylor, Dr. Byrne opined, “It is my opinion Ms. Taylor should have had the tooth removed under a local anesthesia or possibly a conscious sedation and local anesthesia because of her significant general anesthesia medical risks.”  After setting forth Dr. Walters’s standard of care violations in failing to consider the increased risk of office-based general anesthesia in a morbidly obese patient, Dr. Byrne opined, “In my medical opinion, Dr. Walters had an inadequate fund of knowledge, demonstrated poor clinical judgment, and possessed extremely low skill levels in his ability to manage and maintain a difficult airway which caused the death of Ms. Taylor.”  After setting forth Dr. Walters’s standard of care violations in failing to train and rehearse his office staff in emergency procedures, Dr. Byrne opined, “In my opinion, the apparent lack of emergency training and performance by Dr. Walters and his staff caused Ms. Taylor’s death.”  After setting forth Dr. Walters’s standard of care violations in failing to appropriately treat Ms. Taylor’s respiratory emergency by failing to immediately administer reversal agents, failing to establish an intubated airway, and failing to provide adequate respiratory support, Dr. Byrne opined, “It is my opinion, Dr. Walters had an inadequate fund of anesthesia knowledge about respiratory depression and possessed extremely poor judgment and skill levels in his ability to manage and maintain an adequate airway which caused the death of Ms. Taylor.”  These examples do not constitute a complete itemization of the causation opinions in Dr. Byrne’s report.  There are still more, which we do not detail here.  Finally, Dr. Byrne concluded, “It is my opinion that Dr. Walters’[s] negligent acts are responsible for the demise of Ms. Elizabeth Taylor.”  

Viewing the information set forth within the four corners of Dr. Byrne’s report, we hold that the trial court did not abuse its discretion by determining Dr. Byrne’s report provides a fair summary of his expert opinions as to the “applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.”
  
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6); 
Palacios
, 46 S.W.3d at 878.  The trial court did not abuse its discretion by determining that Dr. Byrne’s report constitutes an objective good faith effort to satisfy the two purposes of  section 74.351.  
See 
Tex. Civ. Prac. & Rem. Code Ann. § 74.351.  

The cases cited by Dr. Walters for the contrary position are not applicable here.  
See Clark v. HCA, Inc.
, 210 S.W.3d 1, 11 (Tex. App.—El Paso 2005, no pet.) (holding expert report did not causally link alleged negligent use of Lovenox to compartment syndrome alleged as injury from doctor’s negligence); 
Barko v. Genzel
, 123 S.W.3d 457, 458–59 (Tex. App.—Eastland 2003, no pet.) (holding expert report did not causally link plaintiff’s claims that doctor negligently failed to diagnose and treat back injury to miscarriage alleged as injury from doctor’s negligence); 
Windsor v. Maxwell
, 121 S.W.3d 42, 46–50 (Tex. App.—Fort Worth 2003, pet. denied) (holding expert report did not causally link plaintiff’s pleaded facts to intimal injury to left vertebral artery alleged as injury from doctor’s negligence); 
Zavala v. Pinkerton
, No. 03-05-00169-CV, 2007 WL 2010832, at *2 (Tex. App.—Austin July 10, 2007, no pet.) (mem. op.) (holding expert report did not causally link plaintiff’s claim of negligent wisdom tooth extraction “to the chronic facial pain, internal derangement of the right and left temporomandibular joints and other harm” alleged as injuries from dentist’s negligence); 
Meyers v. Golden Palms Ret. & Health Ctrs
.
, Inc.
, No. 13-06-00289-CV, 2007 WL 1500819, at *3 (Tex. App.—Corpus Christi May 24, 2007, pet. denied) (mem. op.) (holding expert report did not show causal link between plaintiff’s claim of nursing home employees’ negligent performance of a transfer of plaintiff from wheel chair to the broken femur alleged as injury from negligence). 

Here, unlike the expert reports in 
Clark
, 
Barko
, 
Windsor
, 
Zavala
, and 
Meyers
, Dr. Byrne’s report does causally link Dr. Walters’s standard of care violations to the injury—death—alleged to have occurred as a result of Dr. Walters’s negligence.  As set forth above, and demonstrated in the report attached to this opinion as Appendix A, Dr. Byrne’s report itemizes and then discusses in detail nine specific standard-of-care violations by Dr. Walters: failure to appropriately classify the pre-operative physical risk status of Ms. Taylor; failure to consider the increased risks of office-based general anesthesia in a morbidly obese patient; failure to properly assess the status of Ms. Taylor’s asthmatic bronchitis prior to administering general anesthesia; failure to train and rehearse his office staff in emergency procedures; failure to monitor Ms. Taylor’s vital signs while she was under general anesthesia; failure to properly treat Ms. Taylor’s respiratory emergency by not immediately administering reversal agents, not establishing an intubated airway, and not providing adequate respiratory support; failure to maintain flumazinil (Romazicon) medication on his “crash cart;” failure to properly perform advanced cardiac life support on Ms. Taylor; and failure to use prudent medical judgment by choosing to use general anesthesia on Ms. Taylor for “the simple removal of a tooth.”  After each section of the report discussing each of these nine standard of care violations, Dr. Byrne’s report links the standard of care violation specifically to the facts of Ms. Taylor’s death.  Dr. Byrne’s factually specific causation opinions are not conclusory.  
See Arkoma Basin Exploration Co. v. FMF Assocs. 1990-A, Ltd.
, 249 S.W.3d 380, 392 n.32 (Tex. 2008) (defining conclusory as “[e]xpressing a factual inference without stating the underlying facts on which the inference is based”); 
see also, e.g., Mosley v. Mundine
, 249 S.W.3d 775, 781 (Tex. App.—Dallas 2008, no pet.) (holding expert report sufficient on causation element); 
Grindstaff v. Michie
, 242 S.W.3d 536, 544 (Tex. App.—El Paso 2007, no pet.) (same); 
Patel v. Williams
, 237 S.W.3d 901, 906 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (same); 
Bidner v. Hill
, 231 S.W.3d 471, 474 (Tex. App.—Dallas 2007, pet. denied) (same).  

Moreover, this is not a case like 
Clark
, 
Barko
, 
Windsor
, 
Zavala
, or 
Meyers
, where the injury alleged by the plaintiff did not necessarily follow from the negligence alleged by the plaintiff.  Here the negligence alleged all relates to Dr. Walters’s administration of office-based general anesthesia to Ms. Taylor.  The injury alleged, the death of Ms. Taylor from respiratory depression induced by drugs administered by Dr. Walters,  flows—as opined by Dr. Byrne—directly from Dr. Walters’s negligent administration of those drugs in an office-based general anesthesia and from Dr. Walters’s negligent care for Ms. Taylor during general anesthesia and after she suffered respiratory distress.  An “expert report does not need to marshal all the evidence necessary to establish causation at trial,” it must only “contain sufficiently specific information to demonstrate causation beyond mere conjecture.”  
Farishta v. Tenet Healthsystem Hosps. Dallas, Inc.
, 224 S.W.3d 448, 453 (Tex. App.—Fort Worth 2007, no pet.) (citing 
Wright
, 79 S.W.3d at 52).  Dr. Byrne’s report more than adequately meets this standard.

Concerning Dr. Walters’s contention that Dr. Byrne’s report is inadequate because it “fails to rule out other possible causes of Ms. Taylor’s death,” no such requirement exists, even at trial in a medical negligence case.  In a medical malpractice case, the plaintiff must prove by competent testimony that the defendant’s negligence proximately caused the plaintiff’s injury.  
Duff v. Yelin
, 751 S.W.2d 175, 176 (Tex. 1988) (citing 
Hart v. Van Zandt
, 399 S.W.2d 791, 792 (Tex. 1965) and 
Bowles v. Bourdon
, 148 Tex. 1, 5, 219 S.W.2d 779, 782 (1949)).  The plaintiff must establish a causal connection beyond the point of conjecture; proof of mere possibilities will not support the submission of an issue to the jury.  
Duff
, 751 S.W.2d at 176.  The plaintiff is required to show evidence of a “reasonable medical probability” or “reasonable probability” that his or her injuries were proximately caused by the negligence of one or more of the defendants.  
Park Place Hosp. v. Estate of Milo
, 909 S.W.2d 508, 511 (Tex. 1995).  But a plaintiff is not required to establish causation in terms of medical certainty, nor is he or she required to exclude every other reasonable hypothesis.  
Bradley v. Rogers
, 879 S.W.2d 947, 954 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (citing 
King v. Flamm
, 442 S.W.2d 679, 682 (Tex. 1969)).  Dr. Walters has cited no authority, and we have located none, indicating that an expert report must “rule out other possible causes of Ms. Taylor’s death” in order to be adequate under chapter 74.  Moreover, Dr. Byrne’s report specifically explains that “the autopsy performed by the Tarrant [c]ounty Medical Examiner ruled out a catastrophic cause of death such as a stroke or a myocardial infarction and physical and microscopic findings were consistent with respiratory and cardiac arrest.”

Concerning Dr. Walters’s contention that Dr. Byrne’s report is inadequate because it “fails to explain how Dr. Walters’[s] failure to appropriately treat Ms. Taylor’s respiratory depression caused her death,” we simply cannot agree; Dr. Byrne’s report specifically explains that Dr. Walters failed to appropriately treat Ms. Taylor’s respiratory depression by failing to administer reversal agents, failing to establish an intubated airway, failing to provide adequate respiratory support, failing to properly administer advanced cardiac life support, and failing to train his staff in emergency procedures.  Dr. Byrne’s report specifically opines that each of these acts caused the death of Ms. Taylor by preventing adequate ventilation of Ms. Taylor and allowing her oxygen saturation to drop below an acceptable level. 

Concerning Dr. Walters’s contentions that Dr. Byrne’s report is inadequate because it “omits any explanation for how Dr. Walters’[s] administration of general anesthesia proximately caused Ms. Taylor’s death,” “contains a large analytical gap in that he failed to explain how Dr. Walters’[s] administration of Versed, Fentanyl, and Propofal proximately caused Ms. Taylor’s death,” and “fails to flesh out how Dr. Walters’[s] administration of general anesthesia and failure to respond to Ms. Taylor’s respiratory depression caused Ms. Taylor’s death,” Dr. Byrne’s report speaks for itself.  As explained above, Dr. Byrne’s report details exactly how Dr. Walters’s administration of general anesthesia caused Ms. Taylor’s death.  These contentions are simply variations of the same challenges to Dr. Byrne’s report that we have rejected.

Concerning Dr. Walters’s contention that Appellee is somehow prohibited from using an expert report paid for and prepared for the Texas State Board of Dental Examiners, we have found no authority for this contention and Dr. Walters has cited none.  And Dr. Byrne’s report expressly states,

While there are similarities, it is my opinion that a case review for a licensing board is different from that of a civil negligence case.  The licensing board is not only concerned about causal negligent acts and damages to a patient as in a civil litigation, I believe they are also concerned about other acts which demonstrate a practitioner’s fund of knowledge, medical judgment, clinical skill, trend of practice, and attitude toward patient care in an effort to meet their charge to protect the public.

Therefore, in my report I will also list all standard of care violations I note in this case committed by Dr. Walters, be they causal to damage or not . . . .

Thus, Dr. Byrne’s report does include a “Standard of Care Violations–Section 1,” which addresses Dr. Walters’s violations of standards of care relevant to the State Board’s rules.  We did not utilize these standard of care violations in our analysis of Dr. Byrne’s report.  And Dr. Byrne’s report contains a “Standard of Care Violations–Section 2” in which Dr. Byrne explains, “In this section I list and discuss the ‘standard of care’ violations committed by Dr. Walters which led to Ms. Taylor’s demise.”  These standard of care violations and their corresponding specific factually based causation opinions form the basis of our analysis of the adequacy of Dr. Byrne’s report.  Accordingly, although Dr. Walters may be correct that the section 1 standard of care violations are not applicable to a health care liability claim, the section 2 standard of care violations clearly are.

We overrule the remainder of Dr. Walters’s sole issue.

VI.  Conclusion
 

Having overruled Dr. Walters’s sole issue, we affirm the trial court’s order denying Dr. Walters’s motion to dismiss.

SUE WALKER

JUSTICE

PANEL: GARDNER, WALKER, and MCCOY, JJ.

DELIVERED: January 22, 2009

APPENDIX

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

FOOTNOTES
1:
See
 Tex. R. App. P. 47.4.