

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00077-CV

RAMON J. GARCIA, M.D.

APPELLANT

V.

STEPHANIE ALLEN

APPELLEE

------------

## FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

## I. INTRODUCTION

In two issues, Appellant Ramon J. Garcia, M.D. contends that the trial court abused its discretion by denying his motion to dismiss Appellee Stephanie Allen's health care liability suit against him based on the alleged deficiencies in her timely-filed statutory expert report. For the reasons set forth below, we hold

that the trial court did not abuse its discretion.  We will therefore affirm the trial court's order denying Dr. Garcia's motion to dismiss.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Allen filed suit in January 2005.  She timely filed and served on Dr. Garcia a statutory expert report and curriculum vitae.  Dr. Garcia timely filed objections to Allen's report and moved to dismiss her health care liability claim.  Dr. Garcia did not request a hearing on his objections or motion to dismiss.

In due course, the trial court signed a docket control order setting the case for trial the week of May 19, 2008.  Discovery proceeded.  Allen deposed four expert witnesses, designated them as expert witnesses, and served their reports on Dr. Garcia—all in advance of the court-ordered deadline for expert witness designation; the four experts were Dr. Charles Marable, Dr. John D. Fisk, Dr. Richard Fulbright, and Gerald Casenave.  Dr. Garcia's attorney was present at the depositions of these four experts and cross-examined each of them; Dr. Garcia himself attended the deposition of Dr. Fisk.  The case was subsequently reset for trial the week of April 13, 2009; the week of October 26, 2009; and for November 2, 2009.  The trial court later granted an indefinite continuance of the November 2, 2009 trial date.

In late September 2009, after the depositions of Dr. Marable, Dr. Fisk, Dr. Fulbright, and Mr. Casenave and after Allen had served the reports of each of these experts on Dr. Garcia, Dr. Garcia filed a second motion to dismiss, which was titled "Motion to Dismiss Based on Previously Filed Objections To Expert

2

Report." Dr. Garcia asserted that alleged inadequacies in Allen's initial statutory expert report, which had been timely filed almost five years earlier, entitled him to dismissal of Allen's health care liability claim against him.

On November 30, 2009, Dr. Garcia filed a combined traditional and no-evidence motion for summary judgment challenging the causation element of Allen's health care liability claim against him. Dr. Garcia's motion for summary judgment and his attached summary judgment evidence spans 213 pages in the clerk's record. The motion for summary judgment contains a detailed statement of facts concerning Allen's health care liability allegations against Dr. Garcia. The summary judgment evidence attached to Dr. Garcia's motion for summary judgment includes Allen's medical records, medical reports relating to Allen authored by Dr. Garcia, deposition excerpts from the deposition of Dr. Marable, deposition excerpts from the deposition of Allen herself, and deposition excerpts from the deposition of Dr. Fulbright.

On January 28, 2010, Allen filed with the trial court and served on Dr. Garcia "Supplements to Plaintiff's Expert Report That Was Filed At The Initiation Of Litigation." Allen filed as supplements to her initial expert report a supplemental report from Dr. Marable, the expert report and curriculum vitae of Dr. Fisk, the expert report and curriculum vitae of Dr. Fulbright, and the expert report and curriculum vitae of Mr. Casenave. Allen also filed as supplements to her initial expert report deposition excerpts from Dr. Marable's, Dr. Fisk's, Dr. Fullbright's, and Mr. Casenave's depositions. The supplement indicated that all

3

of these reports and vitae had been previously served on Dr. Garcia in advance of the court-ordered deadline to designate expert witnesses. Allen also filed a response to Dr. Garcia's motion to dismiss specifically requesting that, if the trial court found Dr. Marable's initial report inadequate, the court grant her thirty days to amend Dr. Marable's initial report.

On February 4, 2010, the trial court held a hearing on both Dr. Garcia's second motion to dismiss and his motion for summary judgment; the trial court signed an order denying both motions. The order stated, "After careful consideration of Defendant's summary judgment motion and motion to dismiss, Plaintiff's response, and all other pleadings filed, including the Court's file, as well as case law cited and arguments of counsel, it is this Court's opinion that Defendant's motions should be denied." Dr. Garcia perfected this interlocutory appeal of the trial court's February 17, 2010 order denying his motion to dismiss.

### III. STANDARD OF REVIEW

We review a trial court's denial of a motion to dismiss for an abuse of discretion. *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *Maris v. Hendricks*, 262 S.W.3d 379, 383 (Tex. App.—Fort Worth 2008, pet. denied); *Ctr. for Neurological Disorders, P.A. v. George*, 261 S.W.3d 285, 290–91 (Tex. App.—Fort Worth 2008, pet. denied). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701

4

S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id*. But a trial court has no discretion in determining what the law is or in applying the law to the facts, and thus "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding); *Ehrlich v. Miles*, 144 S.W.3d 620, 624 (Tex. App.—Fort Worth 2004, pet. denied).

## IV. STATUTORY STANDARDS FOR EXPERT REPORTS

Chapter 74 requires a health care liability claimant to serve defendants with an expert report and curriculum vitae within 120 days of filing the claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon Supp. 2010). The purpose of the expert report requirement is to inform the defendant of the specific conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (citing *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001)). An expert report "need not marshal all the plaintiff's proof." *Palacios*, 46 S.W.3d at 878 (construing former Texas Revised Civil Statute art. 4590i, § 13.01). Additionally, the information in the report "does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Id*. at 879.

5

Once a report is timely served, a defendant whose conduct is implicated in the report must serve any objection to the sufficiency of the report within twenty-one days after the date the defendant was served or otherwise waive any objections. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). If the defendant files a motion challenging the adequacy of the expert report, the court shall grant the motion "only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report." *Id.* § 74.351(*l*). The trial court may grant to the claimant one thirty-day extension to cure a deficiency in the initial expert report. *Id.* § 74.351(c). If a claimant does not receive notice that the trial court has granted an extension within the initial time to file an expert report, then the thirty-day extension runs from the date the claimant receives notice of the extension. *Id.* A claimant may file separate expert reports addressing different liability and causation issues concerning a single physician defendant. *Id.* § 74.351(i).

## V. NO ABUSE OF DISCRETION BY THE TRIAL COURT

### A. Initial Report Adequate

Looking to the information within the four corners of Allen's initial May 11, 2005 report by Dr. Marable, that report indicates that Allen suffered blurred and double vision in 1999, that an MRI of her head was performed in 1999, and that the radiologist who read the scan negligently read it as normal. The report indicates that a repeat MRI in 2003 showed a now-inoperable tumor. Dr. Marable's initial report states, in pertinent part,

6

The patient has a left cavernous sinus tumor, evident on the scan in 1999, and is now an inoperable tumor, found in 2003 on the repeat MRI. It was present in 1999.

. . . The radiologist [Dr. Garcia is the radiologist who read Allen's 1999 MRI] who read this scan in 1999 was negligent, whose negligence has basically caused this tumor to develop and grow to the point it is now inoperable. The radiologist was negligent in failing to read the scan appropriately. Had he read the MRI appropriately, the tumor would have at that point been a size that would have been operable, whereas now it is inoperable. The appropriate care would have been to read the scan appropriately and correctly and this was not done.

Concerning what a proper reading of Allen's 1999 MRI would have shown, Dr. Marable's initial report states,

Review of the [1999] MRI shows the lateral ventricles are normal in size and configuration. There is no displacement or mass effect noted. White and gray matter revealed normal signal, except in the area of the cavernous sinus on the left. There was an area of a tumor that was noted, which looked to be more of a pliable tumor. There were no areas of infarction or hemorrhage noted. There was no subdural or epidural collections evident. Cerebellum and posterior fossa were unremarkable.

Thus, Dr. Marable's initial report adequately sets forth the standard of care—to appropriately and correctly read the 1999 MRI scan of Allen's head that showed an area of tumor that looked to be more of a pliable tumor; adequately sets forth Dr. Garcia's breach of the standard of care—his failure to correctly read the 1999 scan; and adequately sets forth causation—the tumor was operable in 1999 but has grown and is now inoperable. *See id.* § 74.351(r)(6) (defining expert report to include fair summary of expert's opinion as to applicable standard of care, breach of that standard, and causal relationship

7

between breach and injury); *Granbury Minor Emergency Clinic v. Thiel*, 296 S.W.3d 261, 270 (Tex. App.—Fort Worth 2009, no pet.) ("[S]tatements concerning the standard of care and breach need only identify what care was expected and was not given with such specificity that inferences need not be indulged to discern them.") (citing *Palacios*, 46 S.W.3d at 880; *Benish v. Grottie*, 281 S.W.3d 184, 198 (Tex. App.—Fort Worth 2009, pet. denied); and *Thomas v. Alford*, 230 S.W.3d 853, 858 (Tex. App.—Houston [14th Dist.] 2007, no pet.)); *see also Foster v. Richardson*, 303 S.W.3d 833, 841 (Tex. App.—Fort Worth 2009, no pet.) (holding report adequate on causation because it explained how doctor's delayed diagnosis subjected patient to prolonged pain); *Moore v. Sutherland*, 107 S.W.3d 786, 791 (Tex. App.—Texarkana 2003, pet. denied) (holding that expert report based on doctor's misdiagnosis was sufficient as to causation when it specifically stated what defendant "should have done and what happened because he failed to do it").[1] We hold that the trial court did not abuse

---

[1]Dr. Garcia also complains on appeal that Dr. Marable's expert report is inadequate to show that he is qualified to opine as to causation, but Dr. Garcia did not raise such an objection within twenty-one days after the date the report was served. Consequently, he waived that objection. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (providing that "all objections are waived" when defendant physician fails to file and serve any objections to sufficiency of expert report within twenty-one days after service); *Ogletree v. Matthews*, 262 S.W.3d 316, 322 (Tex. 2007); *see also Bakhtari v. Estate of Dumas*, 317 S.W.3d 486, 493 (Tex. App.—Dallas 2010, no pet.) (holding that defendant waived objections that were made for the first time after the twenty-one-day deadline and that trial court could not have properly granted defendant's motion to dismiss based on her untimely objections); *Williams v. Mora*, 264 S.W.3d 888, 891 (Tex. App.—Waco 2008, no pet.) (holding defendant waived objections not made within twenty-one-day period and addressing only those objections timely raised);

8

its discretion by finding that Allen's initial expert report represented an objective good faith effort to comply with the definition of an expert report. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*); *Jernigan*, 195 S.W.3d at 93; *Maris*, 262 S.W.3d at 383; *Ctr. for Neurological Disorders, P.A.*, 261 S.W.3d at 290–91.

### B. Alternatively, Any Inadequacy Cured

Even if Allen's initial May 11, 2005 expert report by Dr. Marable was somehow deficient, the trial court did not abuse its discretion, upon finding her initial report deficient, by granting Allen's request for thirty days to cure any deficiency and by finding the report, as supplemented, adequate. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c) (providing that a trial court may grant one thirty-day extension in order to cure any deficiency when elements of an expert report are found deficient); *Leland v. Brandal*, 257 S.W.3d 204, 207–08 (Tex. 2008).

At the time of the dismissal hearing, Allen had already supplemented her initial expert report, as indicated above, with a supplemental report from Dr. Marable, the expert report and curriculum vitae of Dr. Fisk, the expert report and curriculum vitae of Dr. Fulbright, the expert report and curriculum vitae of Mr. Casenave, and deposition excerpts from Dr. Marable's, Dr. Fisk's, Dr. Fullbright's, and Mr. Casenave's depositions. Dr. Marable's supplemental report provides,

---

*Walters v. Hudoba*, No. 02-08-00196-CV, 2009 WL 161079, at *3 (Tex. App.— Fort Worth Jan. 22, 2009, no pet.) (mem. op.) (same).

9

Dr. Garcia, a Board-Certified Radiologist, was negligent due to the fact he misread the scan as normal. His failures were that he failed to appropriately read the scan and missed the diagnosis. The appropriate standard of care would have been for him to read the scan correctly and find the meningioma. Had he read the MRI appropriately, the tumor would have been found at that point and been operable and much more amenable to gamma knife treatment.

. . . This resulted in the meningioma to exacerbate and grow to the size it is today. Although [Allen] would have still had to have the gamma knife for the meningioma either way, at that time the gamma knife therapy would have really made the tumor a lot smaller and would not have been allowed to grow and have the extensive damage that it has at the present time, such as wrapping around the carotid artery. It would not cause the displacement of the brain tissue that it has done, would not have caused the cognitive defects.

. . . [T]his case has merit due to the fact that had it been discovered earlier, the results would have [been] totally different than they are now. She would not have all the damage to the brain and the subsequent damage that the growth of this tumor is going to cause in the future.

Dr. Fisk's report provides,

The standard of care applicable to Dr. Ramon Garcia was to accurately interpret the MRI examination of 11/12/99. Dr. Ramon Garcia breached the standard of care in that he failed to diagnose the cavernous meningioma, which was readily apparent on that examination. In fact, the history available on Dr. Garcia's note indicated that the diagnosis was "sixth nerve palsy," and Dr. Garcia specifically indicated in a very short report of that examination as his last sentence in his report, "No abnormalities are seen in the cavernous sinus or the trajectory of the sixth cranial nerves." The failure of Dr. Ramon Garcia to meet the standard of care discussed above allowed the meningioma to grow otherwise undetected until a second MRI scan was obtained on 3/27/03, to the point that the tumor is now inoperable as judged by Dr. Charles D. Marable, M.D.

The deviation from the standard of care, outlined foregoing, are the specific conduct which I call in to question. The proper steps that constitute normal standard of care would have been to interpret the MRI scan completely, identifying the meningioma in its

10

characteristic appearance, and alerting the patient and her care providers with that information so that therapeutic care would have been instituted at that time.

When the trial court heard Dr. Garcia's motion to dismiss, the trial court had the discretion, if it found Allen's initial expert report deficient, to grant Allen's request for a thirty-day extension to cure any deficiencies, and after granting such an extension (whether impliedly or explicitly), the trial court could consider the previously-filed supplements to Allen's initial expert report to cure those deficiencies. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c) (providing that if "elements of the [expert] report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency"); *id.* § 74.351(i) ("Nothing in this section shall be construed to mean that a single expert must address all liability and causation issues . . . ."); Tex. R. App. P. 33.1(a)(2)(A) (providing that a trial court may rule on a motion expressly or implicitly); *Leland*, 257 S.W.3d at 207–08; *see also Lewis v. Funderburk*, 253 S.W.3d 204, 208 (Tex. 2008) (holding that a deficiency in any requirement of section 74.351 may be cured by amending an expert report or by serving a report from a separate expert). We have already explained how the initial expert report satisfied the requirements of an expert report under section 74.351; similarly, the supplements to Allen's initial expert report, including the supplemental report of Dr. Marable and the expert report of Dr. Fisk, adequately set forth the standard of care—to accurately and completely interpret the 1999 MRI scan of Allen's head, identifying the meningioma in its characteristic appearance, and to alert Allen so

11

that she could receive therapeutic care; adequately set forth Dr. Garcia's breach of the standard of care—his failure to correctly read the 1999 MRI scan and diagnose the cavernous meningioma, which was readily apparent from the 1999 MRI scan; and adequately set forth causation—exacerbation of the meningioma and growth of the tumor, causing it to become inoperable and less amenable to gamma knife treatment and causing displacement of the brain tissue and cognitive defects.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(i),(r)(6).

Because the trial court could have impliedly granted Allen's request for a thirty-day extension pursuant to section 74.351(c) and considered Allen's previously-filed supplements to her initial report in determining that her expert report as supplemented was sufficient, we hold that the trial court did not abuse its discretion by denying Dr. Garcia's motion to dismiss.  *See id.* § 74.351(c), (r)(6).

Moreover, the record before us is replete with indicia that both Dr. Garcia and the trial court understood the basis of Allen's claims.  *See Bowie Mem'l Hosp.*, 79 S.W.3d at 52 (citing *Palacios*, 46 S.W.3d at 879) (explaining that purpose of expert report is to inform defendant of specific conduct plaintiff has called into question and to provide basis for trial court to conclude that claims have merit).  Dr. Garcia's 213-page summary judgment motion and attached summary judgment evidence clearly demonstrate that Dr. Garcia understood the nature of Allen's claims against him.  And the trial court's denial of Dr. Garcia's

12

no-evidence and traditional motion for summary judgment shows that the trial court possessed adequate information to determine that Allen's claims had merit.

Consequently, we hold that Dr. Marable's initial expert report was adequate and that the trial court did not abuse its discretion by denying Dr. Garcia's motion to dismiss. We alternatively hold that, even assuming Allen's initial expert report of Dr. Marable was somehow deficient, the trial court did not abuse its discretion by impliedly granting Allen a thirty-day extension to cure any deficiencies or by determining that Allen's initial report, as supplemented, satisfied the requirements of an expert report under section 74.351. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c), (r)(6). We overrule Dr. Garcia's first and second issues.

## VI. CONCLUSION

Having overruled Dr. Garcia's two issues, we affirm the trial court's order denying Dr. Garcia's motion to dismiss.

SUE WALKER
JUSTICE

PANEL: DAUPHINOT, WALKER, and GABRIEL, JJ.

DELIVERED: February 10, 2011

13