

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
### FORT WORTH

---

### NO. 2-07-300-CV

---

JASON MARIS, P.A.-C                                           APPELLANT

V.

TADD HENDRICKS, AS                                           APPELLEES
INDEPENDENT EXECUTOR OF THE
ESTATE OF MELISSA HENDRICKS,
DECEASED, AND TADD HENDRICKS,
INDIVIDUALLY AND AS NEXT
FRIEND OF JOSHUA AND DANIEL
HENDRICKS, MINORS, AND
CHARLIE MORELLO

------------

### FROM PROBATE COURT OF DENTON COUNTY

------------

## OPINION

------------

### I. INTRODUCTION

In this accelerated, interlocutory appeal, Appellant Jason Maris, P.A.-C

appeals the trial court's order denying his motion to dismiss the health care

liability claims of Appellees Tadd Hendricks, as independent executor of the estate of Melissa Hendricks, deceased, and Tadd Hendricks, individually and as next friend of Joshua and Daniel Hendricks, minors, and Charlie Morello. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(9) (Vernon Supp. 2007). In a single issue, Maris argues that the trial court erred by not dismissing Appellees' claims because Appellees failed to serve him with an expert report complying with the requirements of section 74.351 of the civil practice and remedies code. *See id.* § 74.351(a), (b), (r)(6) (Vernon Supp. 2007). We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Appellees filed their original petition on October 12, 2004, alleging a health care liability claim against Maris, a physician's assistant who worked for Highland Family Medical Center.[1] Appellees averred that Maris had removed a lesion from Melissa Hendricks's scalp in October 2002 but failed to send it off for appropriate pathological analysis, "thereby eliminating any opportunity for [Melissa] to be properly diagnosed and treated for a malignant condition." Melissa sought treatment for a similar mass that developed on her scalp about a year later, which was removed by a different physician, sent to a pathology lab, and determined to be "malignant and significantly progressed." Melissa

---

[1] Appellees also asserted claims against Stephen A. Glaser, D.O. and Highland Family Medical Center, who are not part of this appeal.

2

subsequently underwent "extensive radical treatment," but she died in December 2004.

The parties filed multiple expert reports and motions to dismiss. Appellees first attached the expert report of Rhett K. Fredric, M.D. to their original petition. The report did not mention Maris by name, but it set forth in part a chronology of events as evidenced by Melissa's medical records, the standard of care applicable to the procedure, how the standard of care had been breached, and a statement of causation.

On November 21, 2005, Maris filed his first motion to dismiss challenging the adequacy of Dr. Fredric's expert report. *See id*. § 74.351(*l*). Maris contended that the report did not name him and that Dr. Fredric testified in his deposition on November 15, 2005, "that he is not qualified to offer any opinions about physician assistants as he never worked with one and does not know the law." On January 13, 2006, Maris filed a supplemental motion to dismiss with attached excerpts of Dr. Fredric's deposition. Appellees responded that Maris had waived any objections to Dr. Fredric's report for failing to object "not later than the 21[st] day after the date it was served" and, alternatively, requested a thirty-day extension pursuant to section 74.351(c) to cure any deficiency. *See id*. § 74.351(c).

3

The trial court conducted a hearing on Maris's first motion to dismiss on January 18, 2006, and found that Dr. Fredric's report was "insufficient as to" Maris but granted Appellees a thirty-day extension to cure the deficiency. On February 16, 2006, Appellees filed another expert report signed by Dr. Fredric that named Maris. Maris conceded during argument in an August 13, 2007 hearing that "Dr. Fredric's affidavit was corrected and fixed by then naming my client as - - by name. . . . He was named in that correcting affidavit . . . ."

Included with Appellees' second supplemental response to a request for disclosure and designation of experts, which was filed on January 17, 2006, was an expert report from Sunti Srivathanakul, M.D. Dr. Srivathanakul reached the same conclusions as Dr. Fredric regarding the applicable standard of care, the manner in which the care provided by Maris failed to meet that standard, and the causal relationship between that failure and Melissa's death. However, Dr. Srivathanakul "imploded" during his deposition on October 30, 2006, resulting in Appellees' de-designating him as a testifying expert shortly thereafter.

At some point between December 1, 2006 and August 13, 2007, the trial court "ruled that Dr. Fredric could not testify against Maris due to his lack

4

of qualifications."[2]  Thereafter, on March 23, 2007, the trial court signed an order granting Appellees' motion for leave to designate new experts.  Appellees filed the expert reports of Terrence Lee Moore, M.D. and Dennis Delasi, P.A.  On May 29, 2007, Maris filed his second section 74.351 motion to dismiss, arguing in part that the new expert reports of Dr. Moore and physician's assistant Delasi were untimely and should be dismissed because they were filed after the expiration of the section 74.351(a) 120-day deadline, which section 74.351(a) prohibits.  *See id*. § 74.351(a); *see also Danos v. Rittger*, No. 01-06-00350-CV, 2007 WL 625816, at *3–4 (Tex. App.—Houston [1st Dist.] Mar. 1, 2007), *rev'd*, 2008 WL 1172183 (Tex. 2008).

On August 13, 2007, at the hearing on Maris's second motion to dismiss, Maris argued that Appellees' claims against him should be dismissed because (1) "now that Dr. Fredric has been stricken from this matter, his report obviously does not meet the standard under 74.351," (2) Appellees de-designated Dr. Srivathanakul as an expert witness, "[s]o therefore, the standard-of-care requirements as an opinion regarding [Maris] have not been

---

[2] The record does not contain an order striking Dr. Fredric as an expert witness.  Maris did, however, file a motion to strike Dr. Fredric on December 1, 2006, and Maris's counsel stated at an August 13, 2007 hearing that the trial court had struck Dr. Fredric as an expert, prohibiting him from "testifying as to standard of care or breach of duty of care as to [Maris]."

5

met timely by the plaintiffs," and (3) the new expert reports were untimely under *Danos*.[3] The trial court denied Maris's motion to dismiss. It is from this interlocutory order that Maris appeals.

### III. SECTION 74.351 EXPERT REPORTS

Like his arguments at the August 13, 2007 hearing, Maris contends that the trial court erred by not granting his motion to dismiss because (1) "Appellees served only one report inside the 120-day deadline that failed to mention Maris and that was from an expert who was unqualified to testify about the standard of care for a physician's assistant," (2) Appellees "filed a second report outside the [120-day] deadline by an expert who also was unqualified to offer the opinions regarding the standard of care applicable to" Maris, and (3) "Appellees' attempt to escape dismissal by serving the reports of two new experts more than two years past the deadline is not authorized . . . ." Maris thus argues that Appellees failed to serve an expert report because the only reports served were not "expert reports" as defined by section 74.351(r)(6). Appellees respond in part that Maris waived any objections to the sufficiency of the report by failing to timely assert an objection. We agree with Appellees.

---

[3] *See Danos*, 2007 WL 625816, at *3–4.

**A.    Standard of Review**

We review a trial court's ruling on a motion to dismiss under section 74.351 for an abuse of discretion.  *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001).  A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles.  *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986).

**B.    Section 74.351 Requirements and Standards**[4]

Civil practice and remedies code section 74.351 provides that, within 120 days of filing suit, a plaintiff must serve expert reports for each physician or

---

[4] The legislature amended section 74.351 in 2005, and the 2005 changes apply as follows:

> only to a cause of action that accrues on or after the effective date of this Act [September 1, 2005].  An action that accrued before the effective date of this Act is governed by the law applicable to the action immediately before the effective date of this Act, and that law is continued in effect for that purpose.

*See* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 2, 2005 Tex. Gen. Laws 1590, 1590 (codified at TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (Vernon 2005)).  Because Appellees' cause of action accrued before the effective date of the current version of section 74.351, the former version of section 74.351 that was effective for claims filed on or after September 1, 2003 applies, and all references to section 74.351 herein are to that version of section 74.351. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 (amended 2005) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (Vernon Supp. 2007)).

health care provider against whom a liability claim is asserted. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). An "expert report" is a written report by an expert that provides a fair summary of the expert's opinions regarding the "applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id*. § 74.351(r)(6). "Each defendant physician or health care provider whose conduct is implicated in a report *must file and serve any objection to the sufficiency of the report* not later than the 21st day after the date it was served, failing which all objections are waived." *Id*. § 74.351(a) (emphasis added). "If an expert report has not been served within [120 days] *because elements of the report are found deficient*, the court may grant one 30-day extension to the claimant in order to cure the deficiency." *Id*. § 74.351(c) (emphasis added). If, on the other hand, a plaintiff does not serve a *timely* expert report, the trial court, on the motion of the affected physician or health care provider, shall, subject to section 74.351(c), enter an order dismissing the case with prejudice. *Id*. § 74.351(b).

As stressed by the italicized portions of the statute above, there is a distinction between an absent report and a report that is timely but deficient, which consequently affects the applicability of the twenty-one day waiver

8

provision in section 74.351(a). *See Ogletree v. Matthews*, No. 06-0502, 2007 WL 4216606, at *3 (Tex. Nov. 30, 2007) ("[A] deficient report differs from an absent report."). When a report is not served within 120 days after suit is filed, the defendant may file a motion to dismiss the case, and the trial court has no discretion but to dismiss the case. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b); *Nexion Health at Oak Manor, Inc. v. Brewer*, 243 S.W.3d 848, 851 (Tex. App.—Tyler 2008, no pet.). Section 74.351(b) does not contain a deadline by which a defendant physician or health care provider must complain about the absent report. *Poland v. Grigore*, 01-07-00197-CV, 2008 WL 340447, at *9 (Tex. App.—Houston [1st Dist.] Feb. 1, 2008, no pet.). Consequently, section 74.351(a)'s twenty-one day objection deadline does not apply to an objection to an expert report based on belated service. *See id*.

Conversely, if a report has been timely served but does not meet the statutory definition of an "expert report" because the report has one or more deficiencies in its contents, the trial court may grant one thirty-day extension to cure the deficiencies; thus, unlike section 74.351(b), dismissal following a defendant's motion complaining of a deficient, but timely, report is not mandatory. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c), (r)(6)*; Poland*, 2008 WL 340447, at *8; *Thoyakulathu v. Brennan*, 192 S.W.3d 849, 853 (Tex. App.—Texarkana 2006, no pet.) ("Section 74.351(c) applies only when

9

'an expert report has not been served within' the 120-day period '*because elements of the report have been found deficient*.' This clearly requires a timely-served report that is deficient.") (emphasis in original). By its plain language, section 74.351(a)'s requirement that a defendant whose conduct is implicated in a report must file and serve "any objection to the *sufficiency* of the report not later than the 21st day after the date it was served" applies to an objection based on the sufficiency (or deficiency) of a timely-served report. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (emphasis added); *Poland*, 2008 WL 340447, at *8 ("[T]he 'objection to the sufficiency of the report' in . . . section 74.351(a) means an objection to the report's substance, not to the timeliness of its service."). Consequently, a defendant physician or health care provider who's conduct is implicated in a timely-served report must file and serve *any* objection to the sufficiency of the report not later than twenty-one days after the report was served, "failing which all objections are waived." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a); *see also Ogletree*, 2007 WL 4216606, at *4–5; *Pena v. Methodist Healthcare Sys. of San Antonio, Ltd.*, 220 S.W.3d 52, 54 (Tex. App.—San Antonio 2006, no pet.) (holding that twenty-one-day period for defendant health care provider to object to sufficiency of report not triggered until claimant has filed both the report and a curriculum vitae of each expert listed in report).

10

**C.    Any Objections to Report's Sufficiency Waived**

Here, Appellees served Dr. Fredric's report on Maris when they filed and served their original petition on October 12, 2004.  Because Appellees served Maris with an expert report within 120 days of filing suit, the report was not an absent report necessitating the mandatory dismissal of Appellees' claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b).  Maris's argument that the report is no expert report because it did not specifically name him is an objection and argument directed to the report's sufficiency.  The question then is whether Dr. Fredric's alleged deficient report implicated Maris, triggering the twenty-one day sufficiency objection deadline of section 74.351(a). *See id*. § 74.351(a).

The report sets forth a chronology of events as evidenced by Melissa's medical records.  It stated in part,

> There are two different hands describing this visit and the subsequent surgery on October 21, performed at Highland Family Medical Clinic at which time a 1 cm mass lesion was removed from Ms. Hendricks' scalp.  There is no indication in the records that the material removed from her scalp was ever sent for appropriate pathological analysis.

Dr. Fredric opined that the "standard of care in this case requires submission of all tissue removed from patients who present with a soft tissue mass for appropriate pathological analysis."  He also opined that the applicable standard

11

of medical care had been breached for "[f]ailing to submit the tissue removed from Ms. Hendricks for appropriate pathological analysis" and for "[f]ailing to diagnose and treat the malignancy present in Ms. Hendricks'[s] body." Dr. Fredric further reasoned that "Highland Family Medical Clinic, by and through the acts and omissions of its staff, failed to meet the applicable standard of medical care or breached the acceptable standard of medical care." He concluded that the "failure to conform to acceptable standards of medical care proximately caused the subsequent disability experienced by Ms. Hendricks, and ultimately will be a proximate cause of her death from metastatic soft tissue sarcoma." Maris is the individual who removed the initial cyst from Melissa's scalp.

We determine that Dr. Fredric's report sufficiently implicated Maris's conduct. *See Palacios*, 46 S.W.3d at 876–80 (discussing purpose of requiring expert testimony and report in medical malpractice cases and stating that report must fulfill statute's purpose of informing defendant of specific conduct called into question by plaintiff and providing a basis for trial court to conclude the claims have merit). Maris thus had twenty-one days from the date he was served with the report—or until November 2, 2004—to assert his objections to the report, but he did not file his first motion to dismiss complaining of the report until November 21, 2005, and his second motion to dismiss until May

12

29, 2007, many days beyond the twenty-one-day deadline. Maris's sufficiency

objection to the report could have been urged within the statutory twenty-one-

day period. Because Maris did not assert his sufficiency objections within the

twenty-one-day period, he waived his objections. *See* TEX. CIV. PRAC. & REM.

CODE ANN. § 74.351(a). *see also Ogletree*, 2007 WL 4216606, at *4–5.[5]

In light of Maris's waiver of his sufficiency objections, the trial court's

subsequent determination that Dr. Fredric's report was "insufficient as to"

---

[5] The cases that Maris relies on to support his argument that Dr. Fredric's report was no expert report are all distinguishable or inapposite, partly because each of the defendants in those cases filed timely objections to the reports, unlike Maris. *See Davis v. Webb*, No. 14-07-00331-CV, 2008 WL 190054, at *1–4 (Tex. App.—Houston [14th Dist.] Jan. 22, 2008, no pet. h.) (holding that expert report of optometrist was no expert report because only a "physician," which does not include an optometrist, may qualify as an expert on the issue of whether a physician departed from accepted standards of medical care); *Cuellar v. Warm Springs Rehab. Found.,* No. 04-06-00698-CV, 2007 WL 3355611, at *1–3 (Tex. App.—San Antonio Nov. 14, 2007, no pet.) (holding that trial court properly dismissed suit because expert reports of nurse and Mexican-licensed doctor, neither of whom were "physicians," were no reports); *see also Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 278 (Tex. App.—Austin 2007, no pet.) (defendant objected to report); *Simonson v. Keppard,* 225 S.W.3d 868, 870 (Tex. App.—Dallas 2007, no pet.) (defendant objected to report).

We are also mindful of Justice Willett's concurring opinion in *Ogletree* observing that, in addition to absent and deficient reports, there might be a third category of expert reports that merits dismissal just like an absent report: "a document so utterly lacking that, no matter how charitably viewed, it simply cannot be deemed an 'expert report' at all, even a deficient one." *See Ogletree*, 2007 WL 4216606, at *6 (Willet, J., concurring). Dr. Fredric's report does not fall within this classification.

13

Maris and its grant to Appellees of a thirty-day extension to cure the alleged deficiency was superfluous and procedurally inconsequential, which Appellees had argued to the trial court. Moreover, the filing of Dr. Srivathanakul's report after the expiration of the 120-day deadline likewise was of no effect because Appellees timely served Dr. Fredric's report implicating Maris and Maris waived his sufficiency objections to the report. Maris's arguments relying on *Danos*, which the supreme court has reversed, and complaining of the untimely filed new expert reports of Dr. Moore and physician's assistant Delasi are inapposite for the same reasons.

Maris further contends that Appellees failed to serve a timely report complying with the requirements of section 74.351(r)(6) because, having determined that Dr. Fredric "could not testify against Maris due to his lack of qualifications," the trial court subsequently struck Dr. Fredric from testifying as an expert on behalf of Appellees.[6] Maris confuses a *Daubert*[7] motion challenging a testifying expert with a section 74.351-based motion to dismiss

---

[6] Maris argued at the August 13, 2007 hearing on his motion to dismiss that "now that Dr. Fred[]ric has been stricken from this matter, his report obviously does not meet the standard under 74.351." And Maris argues, "Because the trial court struck Dr. Fredric's report as to Maris[,] . . . Appellees never served an 'expert report' as defined by the statute."

[7] *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993).

14

a health care liability claim. Nothing in section 74.351 provides that an expert report meeting the statute's requirements is invalidated if the expert who signed off on the report is subsequently struck pursuant to a *Daubert* challenge, nor has Maris directed us to any such authority. Moreover, the supreme court has stated that the trial court's inquiry when determining whether the report represents a good faith effort to comply with the definition of an expert report in section 74.351(r)(6) is limited to the four corners of the report. *Palacios*, 46 S.W.3d at 878. Maris cannot rely on excerpts from deposition testimony taken long after the filing of an adequate expert report and allegedly establishing that a designated expert is not qualified to provide expert testimony because such excerpts are not included within the four corners of the report. Finally, accepting Maris's argument would be inconsistent and incongruous with the goals of section 74.351 because, as Maris states in his brief, "the purposes behind the amendments [to the Medical Liability Act] were, among other things, to remove unwarranted delay and expense, to accelerate the disposition of non-meritorious cases, and to give hard-and-fast deadlines for the serving of expert reports." Maris's attempt to dispose with an initial determination that an expert report satisfies the requirements of section 74.351 after a trial court's ruling months or years later that the same expert who sponsored the report is not

15

qualified to testify as an expert is wholly inconsistent with the "purpose" of the statute.

We hold that the trial court did not abuse its discretion by denying Maris's motion to dismiss Appellees' health care liability claims.  Accordingly, we overrule Maris's sole issue.

## IV.  Conclusion

Having overruled Maris's sole issue, we affirm the trial court's interlocutory order denying Maris's motion to dismiss Appellees' health care liability claims.

DIXON W. HOLMAN
JUSTICE

PANEL A:  CAYCE, C.J.; HOLMAN and WALKER, JJ.

DELIVERED:  May 1, 2008

16