02-10-077-CV
















 

 

 

 

COURT OF APPEALS

SECOND
DISTRICT OF TEXAS

FORT
WORTH

 

NO. 02-10-00077-CV

 

 


 
 
 RAMON
 J. GARCIA, M.D.
 
 
  
 
 
 APPELLANT
 
 


                                                                                                                   

V.

 


 
 
 STEPHANIE
 ALLEN
 
 
  
 
 
 
 
 APPELLEE
 
 


 

 

------------

 

FROM THE 67TH
 DISTRICT COURT OF TARRANT
COUNTY

 

------------

 

OPINION

 

------------

I.  Introduction

In two issues, Appellant
Ramon J. Garcia, M.D. contends that the trial court abused its discretion by
denying his motion to dismiss Appellee Stephanie Allen’s health care liability
suit against him based on the alleged deficiencies in her timely-filed
statutory expert report.  For the reasons
set forth below, we hold that the trial court did not abuse its
discretion.  We will therefore affirm the
trial court’s order denying Dr. Garcia’s motion to dismiss.

II.  Factual and Procedural Background

Allen filed suit
in January 2005.  She timely filed and
served on Dr. Garcia a statutory expert report and curriculum vitae.  Dr. Garcia timely filed objections to Allen’s
report and moved to dismiss her health care liability claim.  Dr. Garcia did not request a hearing on his
objections or motion to dismiss.

In due course,
the trial court signed a docket control order setting the case for trial the
week of May 19, 2008.  Discovery
proceeded.  Allen deposed four expert
witnesses, designated them as expert witnesses, and served their reports on Dr.
Garcia—all in advance of the court-ordered deadline for expert witness
designation; the four experts were Dr. Charles Marable,
Dr. John D. Fisk, Dr. Richard Fulbright, and Gerald Casenave.
 Dr. Garcia’s attorney was present at the
depositions of these four experts and cross-examined each of them; Dr. Garcia
himself attended the deposition of Dr. Fisk. 
The case was subsequently reset for trial the week of April 13, 2009;
the week of October 26, 2009; and for November 2, 2009.  The trial court later granted an indefinite
continuance of the November 2, 2009 trial date.

In late
September 2009, after the depositions of Dr. Marable,
Dr. Fisk, Dr. Fulbright, and Mr. Casenave and after
Allen had served the reports of each of these experts on Dr. Garcia, Dr. Garcia
filed a second motion to dismiss, which was titled “Motion to Dismiss Based on
Previously Filed Objections To Expert Report.”  Dr. Garcia asserted that alleged inadequacies
in Allen’s initial statutory expert report, which had been timely filed almost
five years earlier, entitled him to dismissal of Allen’s health care liability
claim against him.

On November 30,
2009, Dr. Garcia filed a combined traditional and no-evidence motion for
summary judgment challenging the causation element of Allen’s health care
liability claim against him.  Dr. Garcia’s
motion for summary judgment and his attached summary judgment evidence spans
213 pages in the clerk’s record.  The
motion for summary judgment contains a detailed statement of facts concerning
Allen’s health care liability allegations against Dr. Garcia.  The summary judgment evidence attached to Dr.
Garcia’s motion for summary judgment includes Allen’s medical records, medical
reports relating to Allen authored by Dr. Garcia, deposition excerpts from the
deposition of Dr. Marable, deposition excerpts from the
deposition of Allen herself, and deposition excerpts from the deposition of Dr.
Fulbright.

On January 28,
2010, Allen filed with the trial court and served on Dr. Garcia “Supplements to
Plaintiff’s Expert Report That Was Filed At The Initiation Of
Litigation.”  Allen filed as supplements
to her initial expert report a supplemental report from Dr. Marable,
the expert report and curriculum vitae of Dr. Fisk, the expert report and curriculum
vitae of Dr. Fulbright, and the expert report and curriculum vitae of Mr. Casenave.  Allen also
filed as supplements to her initial expert report deposition excerpts from Dr. Marable’s, Dr. Fisk’s, Dr. Fullbright’s,
and Mr. Casenave’s depositions.  The supplement indicated that all of these
reports and vitae had been previously served on Dr. Garcia in advance of the
court-ordered deadline to designate expert witnesses.  Allen also filed a response to Dr. Garcia’s
motion to dismiss specifically requesting that, if the trial court found Dr. Marable’s initial report inadequate, the court grant her thirty
days to amend Dr. Marable’s initial report.

On February 4,
2010, the trial court held a hearing on both Dr. Garcia’s second motion to
dismiss and his motion for summary judgment; the trial court signed an order
denying both motions.  The order stated, “After
careful consideration of Defendant’s summary judgment motion and motion to
dismiss, Plaintiff’s response, and all other pleadings filed, including the
Court’s file, as well as case law cited and arguments of counsel, it is this
Court’s opinion that Defendant’s motions should be denied.”  Dr. Garcia perfected this interlocutory appeal
of the trial court’s February 17, 2010 order denying his motion to dismiss.

III.  Standard of Review

We review a
trial court’s denial of a motion to dismiss for an abuse of discretion.  Jernigan
v. Langley, 195 S.W.3d 91, 93 (Tex. 2006); Maris v. Hendricks, 262 S.W.3d 379, 383 (Tex. App.—Fort Worth 2008,
pet. denied); Ctr. for Neurological
Disorders, P.A. v. George, 261 S.W.3d 285, 290–91 (Tex. App.—Fort Worth
2008, pet. denied).  To determine whether
a trial court abused its discretion, we must decide whether the trial court
acted without reference to any guiding rules or principles; in other words, we
must decide whether the act was arbitrary or unreasonable.  Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241–42 (Tex. 1985), cert. denied, 476 U.S. 1159 (1986).  Merely because a trial court may decide a
matter within its discretion in a different manner than an appellate court
would in a similar circumstance does not demonstrate that an abuse of discretion
has occurred.  Id.  But a trial court has no
discretion in determining what the law is or in applying the law to the facts,
and thus “a clear failure by the trial court to analyze or apply the law
correctly will constitute an abuse of discretion.”  Walker
v. Packer, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding); Ehrlich v. Miles, 144 S.W.3d 620, 624
(Tex. App.—Fort Worth 2004, pet. denied).

IV.  Statutory Standards for Expert Reports

Chapter 74
requires a health care liability claimant to serve defendants with an expert
report and curriculum vitae within 120 days of filing the claim.  See
Tex. Civ. Prac. & Rem. Code
Ann. § 74.351(a) (Vernon Supp. 2010). 
The purpose of the expert report requirement is to inform the defendant
of the specific conduct the plaintiff has called into question and to provide a
basis for the trial court to conclude that the claims have merit.  Bowie Mem’l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002)
(citing Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 878 (Tex.
2001)).  An expert report “need not
marshal all the plaintiff’s proof.”  Palacios,
46 S.W.3d at 878 (construing former Texas Revised Civil Statute art. 4590i, §
13.01).   Additionally, the information
in the report “does not have to meet the same requirements as the evidence
offered in a summary-judgment proceeding or at trial.”  Id. at 879.

Once a report is
timely served, a defendant whose conduct is implicated in the report must serve
any objection to the sufficiency of the report within twenty-one days after the
date the defendant was served or otherwise waive any objections.  Tex. Civ. Prac. & Rem. Code Ann. §
74.351(a).  If the defendant files
a motion challenging the adequacy of the expert report, the court shall grant
the motion “only if it appears to the court, after hearing, that the report
does not represent an objective good faith effort to comply with the definition
of an expert report.”  Id. § 74.351(l).  The trial court
may grant to the claimant one thirty-day extension to cure a deficiency in the
initial expert report.  Id. § 74.351(c).  If a claimant does not receive notice that
the trial court has granted an extension within the initial time to file an
expert report, then the thirty-day extension runs from the date the claimant
receives notice of the extension.  Id. 
A claimant may file separate expert reports addressing different liability
and causation issues concerning a single physician defendant.  Id. § 74.351(i).

V.  No
Abuse of Discretion by the Trial Court

A.  
 Initial Report Adequate

Looking to the
information within the four corners of Allen’s initial May 11, 2005 report by
Dr. Marable, that report indicates that Allen
suffered blurred and double vision in 1999, that an MRI of her head was
performed in 1999, and that the radiologist who read the scan negligently read it
as normal.  The report indicates that a
repeat MRI in 2003 showed a now-inoperable tumor.  Dr. Marable’s initial
report states, in pertinent part, 

The
patient has a left cavernous sinus tumor, evident on the scan in 1999, and is
now an inoperable tumor, found in 2003 on the repeat MRI.  It was present in 1999.

 

. . . The
radiologist [Dr. Garcia is the radiologist who read Allen’s 1999 MRI] who read
this scan in 1999 was negligent, whose negligence has
basically caused this tumor to develop and grow to the point it is now
inoperable.  The radiologist was
negligent in failing to read the scan appropriately.  Had he read the MRI appropriately, the tumor
would have at that point been a size that would have been operable, whereas now
it is inoperable.  The appropriate care
would have been to read the scan appropriately and correctly and this was not
done.

 

Concerning what
a proper reading of Allen’s 1999 MRI would have shown, Dr. Marable’s
initial report states,

Review of the [1999]
MRI shows the lateral ventricles are normal in size and configuration.  There is no displacement or mass effect
noted.  White and gray matter revealed
normal signal, except in the area of the cavernous sinus on the left.  There was an area of a tumor that was noted,
which looked to be more of a pliable tumor. 
There were no areas of infarction or hemorrhage noted.  There was no subdural or
epidural collections evident. 
Cerebellum and posterior fossa were
unremarkable.

 

Thus, Dr. Marable’s initial report adequately sets forth the standard
of care—to appropriately and correctly read the 1999 MRI scan of Allen’s head
that showed an area of tumor that looked to be more of a pliable tumor;
adequately sets forth Dr. Garcia’s breach of the standard of care––his failure
to correctly read the 1999 scan; and adequately sets forth causation––the tumor
was operable in 1999 but has grown and is now inoperable.  See id.
§ 74.351(r)(6) (defining expert report to include fair summary of expert’s
opinion as to applicable standard of care, breach of that standard, and causal
relationship between breach and injury); Granbury
Minor Emergency Clinic v. Thiel, 296 S.W.3d 261,
270 (Tex. App.—Fort Worth 2009, no pet.) (“[S]tatements
concerning the standard of care and breach need only identify what care was
expected and was not given with such specificity that inferences need not be
indulged to discern them.”) (citing Palacios, 46 S.W.3d at 880; Benish v. Grottie,
281 S.W.3d 184, 198 (Tex. App.—Fort Worth 2009, pet. denied); and Thomas v. Alford, 230 S.W.3d 853, 858
(Tex. App.—Houston [14th Dist.] 2007, no pet.)); see also Foster v. Richardson, 303 S.W.3d 833, 841 (Tex. App.—Fort
Worth 2009, no pet.) (holding report adequate on causation because it explained
how doctor’s delayed diagnosis subjected patient to prolonged pain); Moore v. Sutherland, 107 S.W.3d 786, 791
(Tex. App.—Texarkana 2003, pet. denied) (holding that expert report based on
doctor’s misdiagnosis was sufficient as to causation when it specifically stated
what defendant “should have done and what happened because he failed to do it”).[1]  We hold that the trial court did not abuse
its discretion by finding that Allen’s initial expert report represented an
objective good faith effort to comply with the definition of an expert report.  See Tex.
Civ. Prac. & Rem. Code Ann. §
74.351(l); Jernigan, 195 S.W.3d at 93; Maris,
262 S.W.3d at 383; Ctr. for Neurological
Disorders, P.A., 261 S.W.3d at 290–91.

B.  
 Alternatively, Any Inadequacy Cured

Even if Allen’s
initial May 11, 2005 expert report by Dr. Marable was
somehow deficient, the trial court did not abuse its discretion, upon finding
her initial report deficient, by granting Allen’s request for thirty days to
cure any deficiency and by finding the report, as supplemented, adequate.  See
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c)
(providing that a trial court may grant one thirty-day extension in order to
cure any deficiency when elements of an expert report are found deficient); Leland v. Brandal,
257 S.W.3d 204, 207–08 (Tex. 2008).

At the time of
the dismissal hearing, Allen had already supplemented her initial expert report,
as indicated above, with a supplemental report from Dr. Marable,
the expert report and curriculum vitae of Dr. Fisk, the expert report and curriculum
vitae of Dr. Fulbright, the expert report and curriculum vitae of Mr. Casenave, and deposition excerpts from Dr. Marable’s, Dr. Fisk’s, Dr. Fullbright’s,
and Mr. Casenave’s depositions.  Dr. Marable’s supplemental
report provides, 

Dr.
Garcia, a Board-Certified Radiologist, was negligent due to the fact he misread
the scan as normal.  His failures were
that he failed to appropriately read the scan and missed the diagnosis.  The appropriate standard of care would have
been for him to read the scan correctly and find the meningioma.  Had he read the MRI appropriately, the tumor
would have been found at that point and been operable and much more amenable to
gamma knife treatment. 

 

. . . This resulted
in the meningioma to exacerbate and grow to the size it is today.  Although [Allen] would have still had to have
the gamma knife for the meningioma either way, at that time the gamma knife
therapy would have really made the tumor a lot smaller and would not have been
allowed to grow and have the extensive damage that it has at the present time,
such as wrapping around the carotid artery. 
It would not cause the displacement of the brain tissue that it has
done, would not have caused the cognitive defects.

 

. . . [T]his case
has merit due to the fact that had it been discovered earlier, the results
would have [been] totally different than they are now.  She would not have all the damage to the
brain and the subsequent damage that the growth of this tumor is going to cause
in the future.

 

Dr.
Fisk’s report provides,

The
standard of care applicable to Dr. Ramon Garcia was to accurately interpret the
MRI examination of 11/12/99.  Dr. Ramon
Garcia breached the standard of care in that he failed to diagnose the
cavernous meningioma, which was readily apparent on that examination.  In fact, the history available on Dr. Garcia’s
note indicated that the diagnosis was “sixth nerve palsy,” and Dr. Garcia
specifically indicated in a very short report of that examination as his last
sentence in his report, “No abnormalities are seen in the cavernous sinus or
the trajectory of the sixth cranial nerves.” 
The failure of Dr. Ramon Garcia to meet the standard of care discussed
above allowed the meningioma to grow otherwise undetected until a second MRI
scan was obtained on 3/27/03, to the point that the tumor is now inoperable as
judged by Dr. Charles D. Marable, M.D.

 

The deviation from
the standard of care, outlined foregoing, are the specific conduct which I call
in to question.  The proper steps that
constitute normal standard of care would have been to interpret the MRI scan
completely, identifying the meningioma in its characteristic appearance, and
alerting the patient and her care providers with that information so that
therapeutic care would have been instituted at that time.

 

When the trial
court heard Dr. Garcia’s motion to dismiss, the trial court had the discretion,
if it found Allen’s initial expert report deficient, to grant Allen’s request
for a thirty-day extension to cure any deficiencies, and after granting such an
extension (whether impliedly or explicitly), the trial court could consider the
previously-filed supplements to Allen’s initial expert report to cure those
deficiencies.  See Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(c) (providing that if “elements of the [expert] report are found
deficient, the court may grant one 30-day extension to the claimant in order to
cure the deficiency”); id. § 74.351(i) (“Nothing in this section shall be construed to mean
that a single expert must address all liability and causation issues . . . .”);
Tex. R. App. P. 33.1(a)(2)(A) (providing that a trial court may rule on a motion
expressly or implicitly); Leland, 257
S.W.3d at 207–08; see also Lewis v. Funderburk, 253 S.W.3d 204, 208 (Tex. 2008) (holding
that a deficiency in any requirement of section 74.351 may be cured by amending
an expert report or by serving a report from a separate expert).  We have already explained how the initial
expert report satisfied the requirements of an expert report under section
74.351; similarly, the supplements to Allen’s initial expert report, including
the supplemental report of Dr. Marable and the expert
report of Dr. Fisk, adequately set forth the standard of care—to accurately and
completely interpret the 1999 MRI scan of Allen’s head, identifying the
meningioma in its characteristic appearance, and to alert Allen so that she
could receive therapeutic care; adequately set forth Dr. Garcia’s breach of the
standard of care––his failure to correctly read the 1999 MRI scan and diagnose
the cavernous meningioma, which was readily apparent from the 1999 MRI scan;
and adequately set forth causation––exacerbation of the meningioma and growth
of the tumor, causing it to become inoperable and less amenable to gamma knife
treatment and causing displacement of the brain tissue and cognitive defects.  See Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(i),(r)(6).

Because the
trial court could have impliedly granted Allen’s request for a thirty-day
extension pursuant to section 74.351(c) and considered Allen’s previously-filed
supplements to her initial report in determining that her expert report as
supplemented was sufficient, we hold that the trial court did not abuse its
discretion by denying Dr. Garcia’s motion to dismiss.  See id.
§ 74.351(c), (r)(6).

Moreover, the
record before us is replete with indicia that both Dr. Garcia and the trial court
understood the basis of Allen’s claims.  See Bowie Mem’l
Hosp., 79 S.W.3d at 52 (citing Palacios,
46 S.W.3d at 879) (explaining that purpose of expert report is to inform
defendant of specific conduct plaintiff has called into question and to provide
basis for trial court to conclude that claims have merit).  Dr. Garcia’s 213-page summary judgment motion
and attached summary judgment evidence clearly demonstrate that Dr. Garcia
understood the nature of Allen’s claims against him.  And the trial court’s denial of Dr. Garcia’s no-evidence
and traditional motion for summary judgment shows that the trial court
possessed adequate information to determine that Allen’s claims had merit.

          Consequently, we hold that Dr. Marable’s initial expert report was adequate and that the
trial court did not abuse its discretion by denying Dr. Garcia’s motion to
dismiss.  We alternatively hold that,
even assuming Allen’s initial expert report of Dr. Marable
was somehow deficient, the trial court did not abuse its discretion by
impliedly granting Allen a thirty-day extension to cure any deficiencies or by
determining that Allen’s initial report, as supplemented, satisfied the requirements
of an expert report under section 74.351. 
See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c), (r)(6).  We overrule Dr.
Garcia’s first and second issues.

VI.  Conclusion

Having overruled
Dr. Garcia’s two issues, we affirm the trial court’s order denying Dr. Garcia’s
motion to dismiss.

 

                                                                   SUE
WALKER

                                                                   JUSTICE

 

PANEL:  DAUPHINOT, WALKER, and GABRIEL, JJ.

 

DELIVERED:  February 10, 2011











[1]Dr. Garcia also complains on appeal that Dr. Marable’s expert report is inadequate to show that he is
qualified to opine as to causation, but Dr. Garcia did not raise such an
objection within twenty-one days after the date the report was served.  Consequently, he waived that objection.  See Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(a)
(providing that “all objections are waived” when defendant physician fails to
file and serve any objections to sufficiency of expert report within twenty-one
days after service); Ogletree v. Matthews, 262 S.W.3d 316, 322 (Tex.
2007); see also Bakhtari v. Estate of Dumas, 317 S.W.3d 486, 493 (Tex. App.—Dallas 2010, no
pet.) (holding that defendant waived objections that were made for the first
time after the twenty-one-day deadline and that trial court could not have
properly granted defendant’s motion to dismiss based on her untimely objections);
Williams v. Mora, 264 S.W.3d 888, 891
(Tex. App.—Waco 2008, no pet.) (holding defendant
waived objections not made within twenty-one-day period and addressing only
those objections timely raised); Walters
v. Hudoba, No. 02-08-00196-CV, 2009 WL 161079, at
*3 (Tex. App.—Fort Worth Jan. 22, 2009, no pet.) (mem. op.) (same).