

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

### NO. 02-10-00342-CV

COLUMBIA NORTH HILLS                                        APPELLANT
HOSPITAL SUBSIDIARY, L.P.,
D/B/A NORTH HILLS HOSPITAL

V.

BULMARO ALVAREZ,                                           APPELLEES
INDIVIDUALLY AND AS
REPRESENTATIVE OF THE
ESTATE OF SANDRA ALVAREZ,
DECEASED AND AS NEXT FRIEND
OF SARAY ALVAREZ AND
MARILYN ALVAREZ, MINORS,
AND SANDY ALVAREZ,
INDIVIDUALLY

----------

FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1] ON REHEARING

----------

---

[1]*See* Tex. R. App. P. 47.4.

On April 7, 2011, this court issued an opinion affirming in part and reversing in part the trial court's order denying Appellant Columbia North Hills Hospital Subsidiary, L.P.'s motion to dismiss the health care liability claims asserted against it by Appellees Bulmaro Alvarez, Individually and as Representative of the Estate of Sandra Alvarez, Deceased and as Next Friend of Saray Alavarez and Marilyn Alvarez, Minors, and Sandy Alvarez, Individually. We withdraw our opinion and judgment dated April 7, 2011, and substitute the following.

After due consideration, we deny North Hills Hospital's motion for rehearing and motion for en banc reconsideration. We grant Appellees' motion for rehearing to the extent that we modify our opinion to permit the trial court on remand to determine whether to grant a thirty-day extension to Appellees to cure the deficiencies in the expert report regarding Appellees' pleaded direct liability claims.

## I. INTRODUCTION

Appellant Columbia North Hills Hospital Subsidiary, L.P., d/b/a North Hills Hospital appeals from the trial court's order denying its motion to dismiss the health care liability claims asserted against it by Appellees Bulmaro Alvarez, Individually and as Representative of the Estate of Sandra Alvarez, Deceased and as Next Friend of Saray Alavarez and Marilyn Alvarez, Minors, and Sandy Alvarez, Individually. In three issues, North Hills Hospital complains that although Appellees timely served and timely amended the expert report of

2

Samuel A. Tyuluman, M.D., the trial court nonetheless abused its discretion by refusing to dismiss the claims against North Hills Hospital because Dr. Tyuluman was not qualified to offer the opinions he did; because Dr. Tyuluman's report fails to set forth a standard of care, breach, or causation relating to North Hills Hospital; and generally because the trial court did not dismiss Appellees' claims. Because the record before us reflects no abuse of discretion by the trial court concerning Appellees' vicarious liability claims against North Hills Hospital, we will affirm the portion of the trial court's order refusing to dismiss those claims. But because Dr. Tyuluman's report does not demonstrate that he is qualified to offer an opinion concerning the direct liability causes of action that Appellees pleaded against North Hills Hospital, we will reverse the portion of the trial court's order denying North Hills Hospital's motion to dismiss those claims.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Forty-five-year-old Sandy Alvarez died at North Hills Hospital after a vaginal hysterectomy was performed on her. Following the surgery, Mrs. Alvarez was transferred to the recovery room where she experienced difficulties. She was eventually diagnosed as suffering from hemorrhagic shock and returned to the operating room for surgical repair of the source of her internal bleeding. Mrs. Alvarez died approximately five hours after her second surgery. Mrs. Alvarez's autopsy report indicates that she died as a result of "(1) complications of acute hemorrhagic shock due to post-operative bleed and (2) morbid obesity with hepatomegaly, severe fatty metamorphosis and early fibrosis."

3

Appellees filed suit against North Hills Hospital alleging both vicarious liability and direct liability theories of recovery. Appellees alleged that North Hills Hospital was vicariously liable for its nurses' negligence and alleged various acts and omissions by the North Hills Hospital nursing staff, including the failure to invoke the chain of command. Appellees alleged that North Hills Hospital was directly liable for failing to adequately train its nurses, failing to enforce its policies and procedures, and failing to adequately supervise its nurses. Appellees timely served on North Hills Hospital the report and curriculum vitae of Dr. Tyuluman. North Hills Hospital filed a motion to dismiss alleging that Dr. Tyuluman was not qualified to testify on the standard of care applicable to a hospital and alleging various deficiencies in Dr. Tyuluman's report. After a hearing, the trial court ruled that

> the expert reports submitted by Plaintiffs constitute a good faith effort and meet the requirements of Chapter 74 of the Civil Practice & Remedies Code, with the exception that Plaintiffs are required to submit an amended report breaking out specifically by name each defendant and/or group of defendants and the specific elements relating to the standard of care, breach of the standard of care, and causation for each defendant.

The trial court gave Appellees thirty days to file the amended report; Appellees timely served an amended report of Dr. Tyuluman.[2] North Hills Hospital then filed a second motion to dismiss again alleging that Dr. Tyuluman was not qualified and alleging the same deficiencies in his report. After a hearing, the

---

[2]All subsequent references to Dr. Tyuluman's report are to his amended report.

4

trial court denied North Hills Hospital's second motion to dismiss, and North Hills Hospital perfected this appeal.

## III. STANDARD OF REVIEW

We review a trial court's denial of a motion to dismiss for an abuse of discretion. *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *Maris v. Hendricks*, 262 S.W.3d 379, 383 (Tex. App.—Fort Worth 2008, pet. denied); *Ctr. for Neurological Disorders, P.A. v. George*, 261 S.W.3d 285, 290–91 (Tex. App.—Fort Worth 2008, pet. denied). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id*. But a trial court has no discretion in determining what the law is or in applying the law to the facts, and thus "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding); *Ehrlich v. Miles*, 144 S.W.3d 620, 624 (Tex. App.—Fort Worth 2004, pet. denied).

## IV. STATUTORY STANDARDS FOR EXPERT REPORTS

Chapter 74 requires a health care liability claimant to serve defendants with an expert report and curriculum vitae within 120 days of filing the claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon 2011). The purpose of the expert report requirement is to inform the defendant of the specific conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (citing *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001)). An expert report "need not marshal all the plaintiff's proof." *Palacios*, 46 S.W.3d at 878 (construing former Texas Revised Civil Statute article 4590i, section 13.01). Additionally, the information in the report "does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Id*. at 879.

If the defendant files a motion challenging the adequacy of the expert report, the court shall grant the motion "only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*). The trial court may grant the claimant one thirty-day extension to cure a deficiency in the initial expert report. *Id.* § 74.351(c).

6

# V. CHALLENGES TO DR. TYULUMAN'S QUALIFICATIONS

## A. Dr. Tyuluman is Qualified Concerning North Hills Hospital's Nurses' Conduct

Dr. Tyuluman's report demonstrates that he practices health care in a field of practice that involves the same type of care or treatment as that delivered by the nurses at North Hills Hospital. It states, in pertinent part,

> I practice obstetrics and gynecology in Dallas, Texas and have been since 1986. I am a Clinical Professor of Obstetrics and Gynecology, University of Texas Southwestern Medical School, Parkland Memorial Hospital. I maintain board certification with the American Board Obstetrics and Gynecology. I am a Fellow of the American College of Obstetrics and Gynecology and the American College of Surgeons. . . . I was the Chairman of the Texas Health Resources, Presbyterian Hospital Dallas, Quality Improvement Committee from 1998 until 2002. I served as an elected member of the Clinical Case Reviews Committee (Advisory Committee) of Margot Perot Hospital of Texas Health Resources.

Dr. Tyuluman's report demonstrates that he has knowledge of the accepted standards of health care providers for the condition at issue and by training or experience is qualified to offer an expert opinion regarding those accepted standards. The report states, in pertinent part,

> Over the past 22 years, I have cared for patients just like Mrs. Alvarez hundreds of times. I am familiar with the standard of care for such patients based both on my personal experience and my decades in the profession. As a function of my practice in obstetrics and gynecology, as well as the administrative positions noted above, I am familiar with not only standards of care as they apply to gynecologists, but also as they apply to other physicians caring for patients in the post operative period following a vaginal hysterectomy with a suspicion of post operative hemorrhage. The standard of care is to return the patient in a situation such as this case back to surgery to fix the bleed. This standard applies across lines of specialty. . . . Further, I am familiar with the standards of

7

care as they apply to nurses and to the administration of the department of gynecology from both a physician's point of view and an administrator's. I work with consulting physicians as well as recovery room and postoperative nurses and am familiar with their training and standards as they apply to them. I am qualified to review this case from all of these perspectives. For further details, please see a copy of my CV, which is attached.

In part of its first issue, North Hills Hospital claims that the trial court abused its discretion by determining that Dr. Tyuluman was qualified to render opinions concerning post-operative nursing care or nurses invoking the chain of command in a hospital setting. North Hills Hospital argues that because Dr. Tyuluman is not a nurse, he is not qualified to opine on the nursing standard of care. When a physician states that he is familiar with the standard of care for both nurses and physicians and for the prevention and treatment of the illness, injury, or condition involved in the claim, the physician is qualified on the issue of whether the health care provider departed from the accepted standards of care for health care providers. *See Baylor Med. Ctr. at Waxachachie v. Wallace*, 278 S.W.3d 552, 558 (Tex. App.—Dallas 2009, no pet.) (holding doctor expert's statement that he had worked with nurses, nurse practitioners, physician's assistants, and physicians, including emergency room physicians, and was familiar with the standards of care that applied to such health care providers in similar situations, was sufficient to show expert was qualified to render opinion as to each type of health care provider); *San Jacinto Methodist Hosp. v. Bennett*, 256 S.W.3d 806, 814 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (holding doctor expert qualified to render opinion on nursing standard of care in field in

8

which doctor practiced); *see also Jorgensen v. Tex. MedClinic*, 327 S.W.3d 285, 288–89 (Tex. App.—San Antonio 2010, no pet.) (holding doctor expert qualified to render opinion as to standard of care for all health care providers concerning proper protocol for administration of flu vaccine because standard of care did not vary among health care providers).

As quoted above, after setting forth his credentials and board certification in obstetrics and gynecology, Dr. Tyuluman's report indicates that he is familiar with the standard of care for treating patients like Mrs. Alvarez, that he has cared for hundreds of patients like her during the past twenty-two years, and that he is familiar with the standards of care for recovery room and post-operative nurses caring for patients like Mrs. Alvarez through his experience working with those nurses. Looking to the four corners of Dr. Tyuluman's report, we hold that it establishes that he is qualified to testify concerning North Hills Hospital's nurses' conduct in the care of Mrs. Alvarez. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.402(b)(1), (2), (3) (Vernon 2011) (setting forth qualifications required for experts providing statutory report); *see also, e.g.*, *Wallace*, 278 S.W.3d at 558. We hold that the trial court did not abuse its discretion by determining that Dr. Tyuluman was qualified to offer expert medical opinions concerning Appellees' vicarious liability claims against North Hills Hospital for the alleged negligence of its nurses, including negligence in failing to invoke the chain of command. We overrule the portion of North Hills Hospital's first issue contending that the trial court abused its discretion by determining that Dr. Tyuluman was qualified to

9

opine on the recovery room nursing standard of care applicable to a patient like Mrs. Alvarez.

## B. Dr. Tyuluman is Not Qualified Concerning North Hills Hospital's Direct Liability

In the balance of its first issue, North Hills Hospital contends that the trial court abused its discretion by determining that Dr. Tyuluman was qualified to render opinions concerning North Hills Hospital's direct liability. Appellees pleaded that North Hills Hospital was directly liable for failing to adequately train its nurses, failing to enforce its policies and procedures, and failing to adequately supervise its nurses. Looking only to the four corners of Dr. Tyuluman's report, we hold that it does not establish that he has any familiarity, training, or experience that would allow him to opine as to the standard of care for a hospital in formulating training programs, formulating or enforcing its policies and procedures, or supervising its nurses. *See Hendrick Med. Ctr. v. Conger*, 298 S.W.3d 784, 788 (Tex. App—Eastland 2009, no pet.). As set forth above, Dr. Tyuluman is qualified to opine on the standard of care applicable to recovery room nurses caring for a patient like Mrs. Alvarez; but the standard of care applicable to a hospital in training its nurses, in enforcing its policies and procedures, and in supervising its nurses is an entirely separate standard. *See generally Denton Reg'l Med. Ctr. v. LaCroix*, 947 S.W.2d 941, 950–51 (Tex. App.—Fort Worth 1997, writ denied) (discussing theories of direct hospital liability and applicable standard of care). Although Dr. Tyuluman's report states

10

that he has served as chairman of a hospital quality improvement committee and a member of a clinical case review committee, nowhere in the report does he state that as a result of this or other experience he is familiar with the standard of care for a reasonable, prudent hospital in training its nurses, in enforcing its policies and procedures, and in supervising its nurses. The report does not indicate that, as a result of his committee service, Dr. Tyuluman gained experience in formulating, implementing, or monitoring either hospital nurses' training or enforcement of hospital policies and procedures or hospital nurses' supervision. In short, looking only to the four corners of Dr. Tyuluman's report, we hold that it does not establish that he is qualified to opine on these hospital standards of care. We sustain the portion of North Hills Hospital's first issue contending that the trial court abused its discretion by determining that Dr. Tyuluman was qualified to opine on the standard of care applicable to a hospital in training its nurses, in enforcing its policies and procedures, and in supervising its nurses.

In a subargument included in its second issue, North Hills Hospital contends that Dr. Tyuluman's report does not provide a fair summary of how North Hills Hospital breached the standard of care applicable to a hospital. Looking to the four corners of Dr. Tyuluman's report, we hold that it does not set forth what the standard of care is for North Hills Hospital with respect to adequate training of its nurses, enforcement of its policies and procedures, or supervision of its nurses. *Accord Reed v. Granbury Hosp. Corp*., 117 S.W.3d 404, 409 (Tex.

11

App.—Fort Worth 2003, no pet.). That is, Dr. Tyuluman's report does not state anywhere what the standard of care is for a reasonable, prudent hospital in training its nurses, in enforcing its policies and procedures, and in supervising its nurses.[3] Accordingly, even if the four corners of Dr. Tyuluman's report had established that he was qualified to opine on these standards of care applicable to a hospital, because his report does not set forth these standards of care, we alternatively hold that any determination by the trial court that Dr. Tyuluman's report adequately set forth these standards of care constituted an abuse of discretion.[4]

## VI. CHALLENGES TO ELEMENTS OF STATUTORY EXPERT REPORT

In its second issue, North Hills Hospital challenges the adequacy of Dr. Tyuluman's report as to specific statutory elements. In its third issue, North Hills

---

[3]Dr. Tyuluman's report does state that "[t]he standard of care required the hospital to have adequately trained and qualified PACU and ICU nurses" and that "[t]he standard also required that the hospital have and enforce proper chain of command policies." But these statements are very broad, general, and conclusory; they fall short of stating any standard of care as to what specific training or policies were required. *See Bowie Mem'l Hosp*., 79 S.W.3d at 53 ("A conclusory report does not meet the Act's requirements, because it does not satisfy the *Palacios* test.").

[4]Because we have held that Dr. Tyuluman's report does not establish that he was qualified to opine on the hospital's standard of care on the direct liability claims pleaded by Appellees and because we have alternatively held that, in any event, Dr. Tyuluman's report does not adequately state the standard of care applicable to a hospital concerning Appellees' pleaded theories of direct liability, we need not address North Hills Hospital's contention that Dr. Tyuluman's report does not adequately set forth causation concerning Appellees' direct liability theories of recovery. *See* Tex. R. App. P. 47.1 (requiring appellate court to address in opinion only issues necessary to disposition of appeal).

12

Hospital simply argues that the trial court generally abused its discretion by failing to dismiss Appellees' health care liability claim with prejudice. North Hills Hospital argues its third issue together with its second issue in its brief. North Hills Hospital's third issue therefore presents only the same arguments and grounds for reversal as presented in its second issue. We accordingly address issues two and three together.

## A. Nurses' Breach of the Standard of Care

In part of its second and third issues, North Hills Hospital contends that Dr. Tyuluman's report does not provide a fair summary of how the nurses breached the applicable standard of post-operative nursing care.

Dr. Tyuluman's report states, in pertinent part concerning the nurses' breach of the standard of care,

> The standard of care for North Hill[s] Hospital and its nursing staff caring for a patient like Mrs. Alvarez in the PACU and CCU is to recognize the emergent and critical post-operative bleed and to fully invoke the chain of command to make sure she was returned to surgery by Dr. Allen or some other surgeon in a timely fashion. Additionally, North Hill[s] Hospital nurses were required, according to the applicable standard of care, to properly evaluate operative blood loss. The nursing staff of North Hill[s] Hospital was negligent when they grossly underestimated operative blood loss, not accounting for approximately 4800 cc's. The nursing staff of North Hill[s] Hospital was also negligent in their post-operative management of Mrs. Alvarez, watching her decline throughout the day without effectively utilizing the chain of command [] to make sure that Dr. Allen or some other surgeon returned Mrs. Alvarez to surgery. The standard of care for the nursing staff requires that they both recognize and effectively communicate the emergency nature of the situation and then, should Dr. Allen not move quickly to surgery, go up the chain of command. By 1900, the Assistant CNO and Nurse Manager were

13

at the bedside.  The standard of care required that the nursing staff insist on their involvement much earlier.

As set forth above, Dr. Tyuluman's report specifically identifies how North Hills Hospital's recovery room nurses breached the standard of care:  they did not recognize the emergent and critical post-operative bleed; they watched Mrs. Alvarez decline throughout the day; they did not properly evaluate Mrs. Alvarez's blood loss; they failed to account for 4800 cc's of lost blood; and they failed to invoke the chain of command to get the Assistant CNO and Nurse Manager to come to Mrs. Alvarez's bedside much sooner.

Looking to the four corners of Dr. Tyuluman's report, we hold that the trial court did not abuse its discretion by determining that the report adequately sets forth how the recovery room, post-operative nurses breached the standards of care set forth in the report.  We overrule the portion of North Hills Hospital's second and third issues contending otherwise.

### B.  Causation Element of Nurses' Negligence

In the balance of its second and third issues, North Hills Hospital argues that Dr. Tyuluman's report fails to adequately set forth how the nurses' negligence proximately caused Mrs. Alvarez's death.   Dr. Tyuluman's report provides,

> The failure of all defendants to provide surgery to control the hemorrhage, continuing to administer pressor agents when contraindicated, failure to properly monitor intraoperative blood loss, and failure to recognize the compromised status of the patient during this process are proximate cause of the death of [Mrs.] Alvarez.  Had prompt surgery been performed, it is more likely than not that the

14

injury would have been easily found and corrected, preventing further blood loss. I have performed such surgeries to locate and repair injury following vaginal hysterectomy and know from my experience the effectiveness of such procedures. Had ordinary care been provided during the operative and post operative period, in all medical probability, Mrs. Alvarez would be alive today.

Looking to the four corners of Dr. Tyuluman's report, we hold that the trial court did not abuse its discretion by determining that the report adequately sets forth how the nurses' negligence proximately caused Mrs. Alvarez's death. *See Bowie Mem'l Hosp.*, 79 S.W.3d at 52. The fact that a trier of fact may ultimately reject Dr. Tyuluman's opinion regarding the nurses' causation—i.e., that the nurses failed to properly monitor Mrs. Alvarez's blood loss, failed to recognize her compromised status, and failed to invoke the chain of command, proximately causing Mrs. Alvarez's death—does not render the report insufficient. *See Hayes v. Carroll*, 314 S.W.3d 494, 507 (Tex. App.—Austin 2010, no pet.). The report sufficiently informs North Hills Hospital of the specific conduct of its nurses that Appellees are questioning and provides a basis for the trial court to determine that Appellees' claims have merit. This is all that is required of an expert report. *See Leland v. Brandal*, 257 S.W.3d 204, 206–07 (Tex. 2008) (explaining that expert report is meant to serve two purposes: (1) to inform the defendant of the specific conduct the claimant is questioning and (2) to provide a basis for the trial court to conclude the claims have merit).

We overrule the remainder of North Hills Hospital's second and third issues contending otherwise.

15

## VII. CONCLUSION

Having sustained the portion of North Hills Hospital's first issue claiming that the four corners of Dr. Tyuluman's report does not establish that he was qualified to opine on the standard of care applicable to a hospital in training its nurses, in enforcing its policies and procedures, and in supervising its nurses, we reverse the trial court's September 13, 2010 order to the extent that it failed to dismiss Appellees' direct liability claims against North Hills Hospital for allegedly failing to adequately train its nurses, failing to enforce its policies and procedures, and failing to adequately supervise its nurses. Because Appellees did not have an opportunity to amend this defect in Dr. Tyuluman's report—the trial court specifically directed the deficiency to be addressed during the thirty-day extension that it granted—and because the trial court has not had an opportunity to consider whether Appellees should be granted an extension of time to cure the deficiency found by this court to exist in Dr. Tyuluman's report concerning Appellees' pleaded direct liability claims, we remand those claims to the trial court for a determination of whether to dismiss them or to grant a thirty-day extension of time for Appellees to cure the deficiencies found by this court in Dr. Tyuluman's report regarding Appellees' pleaded direct liability claims. *See TTHR Ltd. P'ship v. Moreno*, No. 02–10–00334–CV, 2011 WL 2651813, at *12–14 (Tex. App.—Fort Worth July 7, 2011, no pet. h.) (mem. op. on reh'g); *Estorque v. Schafer*, 302 S.W.3d 19, 25 (Tex. App.—Fort Worth 2009, no pet.).

16

Having overruled the balance of North Hills Hospital's first issue and its second and third issues and having held that the trial court did not abuse its discretion by determining that Dr. Tyuluman was qualified to opine on the standard of care applicable to North Hills Hospital's recovery room nurses or by determining that Dr. Tyuluman's report adequately sets forth the nurses' breach of the standard of care and how that breach proximately caused Mrs. Alvarez's death, we affirm the trial court's September 13, 2010 order to the extent that it denied North Hills Hospital's motion to dismiss Appellees' vicarious liability claims.[5]

SUE WALKER
JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

DELIVERED:  July 28, 2011

---

[5]This court's November 30, 2010 order staying discovery in the trial court is lifted.